**APOLLO COMPUTER, INC.,
Plaintiff, Appellant,**

v.

**Helge BERG, et al.,
Defendants, Appellees.**

**No. 89–1528.**

United States Court of Appeals,
First Circuit.

Heard Aug. 1, 1989.

Decided Sept. 28, 1989.

Rehearing Denied Oct. 25, 1989.

Richard J. McCarthy, with whom Timothy Q. Feeley and Gaston & Snow, Boston, Mass., was on brief, for plaintiff, appellant.

Steven L. Manchel with whom Goldstein & Manello, Boston, Mass., was on brief, for defendants, appellees.

Before CAMPBELL, Chief Judge, TORRUELLA, Circuit Judge, and WOODLOCK,* District Judge.

* Of the District of Massachusetts, sitting by designation.

TORRUELLA, Circuit Judge.

The plaintiff appeals from a district court order refusing its request for a permanent stay of arbitration proceedings. The facts of the case are undisputed. On March 23, 1984, Apollo Computer, Inc. ("Apollo") and Dicoscan Distributed Computing Scandinavia AB ("Dico") entered into an agreement granting Dico, a Swedish company having its principal place of business in Stockholm, the right to distribute Apollo's computers in four Scandinavian countries. Helge Berg and Lars Arvid Skoog, the defendants in this action, signed the agreement on Dico's behalf in their respective capacities as its chairman and president. The agreement contained a clause stating that all disputes arising out of or in connection with the agreement would be settled in accordance with the Rules of Arbitration of the International Chamber of Commerce ("ICC"), and another clause that stated that the agreement was to be governed by Massachusetts law. The agreement also provided that it could not be assigned by Dico without the written consent of Apollo.[1]

In September 1984, after disputes relating to the financing of Dico's purchases, Apollo notified Dico that it intended to terminate the agreement, effective immediately. Dico then filed for protection from its creditors under Swedish bankruptcy law and subsequently entered into liquidation, with its affairs being handled by its trustee in bankruptcy. The trustee assigned Dico's right to bring claims for damages against Apollo to the defendants. In May 1988, the defendants filed a complaint and a request for arbitration with the ICC.

On August 24, 1988, Apollo rejected arbitration, claiming that there was no agreement to arbitrate between it and the defendants, and that assignment of Dico's contractual right to arbitrate was precluded by the agreement's nonassignment clause. The ICC requested both parties to submit briefs on the issue. On December 15, 1988, the ICC's Court of Arbitration decided that pursuant to its rules, the arbitrator should

1. Pertinent clauses of the agreement are reproduced in the appendix.

resolve the issue of arbitrability, and directed the parties to commence arbitration proceedings to resolve that issue and, if necessary, the merits.

On January 11, 1989, Apollo filed the instant action in federal district court under diversity of citizenship jurisdiction. It sought a permanent stay of the arbitration, pursuant to M.G.L. ch. 251, § 2(b), on the grounds that there is no arbitration agreement between the parties. The parties submitted a statement of material facts not in dispute. Apollo then moved for summary judgment. On May 11, 1989, the district court denied the request to stay arbitration and the motion for summary judgment. The court stated that "[a]s this order is determinative of the entire action, judgment for the defendants shall enter forthwith." Appendix at 78 (hereinafter "App.").

On May 16, 1989, Apollo filed a Notice of Appeal. On May 25, 1989, the defendants filed a motion to dismiss the appeal for lack of jurisdiction, claiming that the district court's order was not final for purposes of 28 U.S.C. § 1291. After receipt of Apollo's opposition to this motion, this court denied the defendants' motion without prejudice and directed the parties to brief the jurisdictional issue, along with the merits, in their briefs on appeal.[2]

*Appellate jurisdiction*

■ We address the jurisdictional issue first. Apollo's complaint raised only one issue—the defendants' right to compel it to arbitrate the dispute between them. The district court's order resolved that issue and was therefore "determinative of the entire action." App. at 78. The district court's order left "nothing to be done except execution of the judgment," *United States v. Metropolitan District Commission*, 847 F.2d 12, 14 (1st Cir.1988), and certainly appears to be final and appealable for purposes of 28 U.S.C. § 1291. Treating the order in this manner is perfectly consistent with this Circuit's precedents in the context of motions to compel arbitration under 9 U.S.C. § 4. We have held that when a federal suit on the underlying claim is pending, a district court's grant or denial of a motion seeking compelled arbitration is not appealable under § 1291. *See Hartford Financial Systems, Inc. v. Florida Software Services, Inc.*, 712 F.2d 724, 729 (1st Cir.1983); *Langley v. Colonial Leasing Co.*, 707 F.2d 1, 5 (1st Cir.1983). When § 4 motions are made in independent proceedings, however, the resulting order is "universally" conceded to be final and appealable under § 1291. *Hartford Financial Systems*, 712 F.2d at 728.[3] The fact that Apollo's motion was made under state law rather than federal law does not alter the analysis. The critical fact is that the motion was brought in an independent proceeding. Consequently, permitting an immediate appeal from the denial of the motion will not lead to piecemeal appeals.

The defendants argue that Apollo's action, despite the form in which it was pleaded, is really not an independent proceeding. Apollo could have included claims related to the substantive dispute in its complaint, the defendants explain, but chose not to do

---

2. On June 16, 1989, the district court granted Apollo's motion for a stay of the arbitration proceedings pending appeal.

3. In its most recent efforts to rationalize the question of appealability of arbitration decisions, Congress adopted this distinction between interlocutory and final decisions. In section 1019 of the Judicial Improvements and Access to Justice Act of 1988, Pub.L. No. 100–702, 102 Stat. 4670–71, codified at 9 U.S.C. § 15, Congress provided that "an appeal may not be taken from an *interlocutory* order ... directing arbitration to proceed," 9 U.S.C. § 15(b) (emphasis added), but "may be taken from ... a *final* decision with respect to an arbitration," *id.* § 15(a) (emphasis added). In section-by-section comments of the bill, submitted in lieu of a

Committee report, 134 Cong. Rec. S16,294 (daily ed. Oct. 14, 1988) (statement of Sen. Heflin), the sponsors of the bill emphasized that "[a]ppeal can be taken from final judgments, including ... a final judgment that refuses to enjoin arbitration." *Id.* at S16,309. Such an appeal was recognized as necessary to "preserve the general policy that appeal should be available where there is nothing left to be done in the district court." *Id.* Because defendants ignore this critical distinction between interlocutory and final orders, their reliance on § 15(b) for analogous support is misguided. Section 15(b) applies to interlocutory orders only; it is thus irrelevant to the appealability of the district court's *final order* in the present case.

so to create an opportunity for immediate appeal of an adverse decision by the district court. Defendants urge this court not to allow Apollo and other plaintiffs to use crafty pleading tactics to avoid the rules barring interlocutory appeals. If we decide that we do have jurisdiction over this appeal, the defendants urge us to bar Apollo from litigating in the future the substantive claims that it should have brought in this proceeding.

This argument is misconceived. It rejects the concept of an independent proceeding, and insists that procedural and substantive claims must be brought together in one proceeding. This position is completely inconsistent with federal practice, which has long recognized the existence of an independent proceeding to resolve the threshold procedural issue of whether a dispute should be arbitrated. *See Hartford Financial Systems*, 712 F.2d at 728 (listing cases discussing independent proceedings under § 4 of the Federal Arbitration Act). Our decision here does not represent a new assault on the policy against piecemeal appeals; litigants who restrict their lawsuit to the issue of arbitrability have always been allowed an immediate appeal from the resulting order. *See Chatham Shipping Co. v. Fertex Steamship Corp.*, 352 F.2d 291, 294 (2d Cir.1965).

Defendants also argue that the failure to plead substantive claims in a proceeding focusing on arbitrability of those issues bars their subsequent litigation. In the arbitration context, as explained above, courts have long permitted the separate adjudication of arbitrability and the underlying substantive issues. Defendants have not identified and we are not aware of any authority even suggesting that dividing arbitration-related litigation in this manner triggers claim preclusion concerns.[4]

*Arbitrability*

Having determined that we have jurisdiction over this appeal, we now turn to the merits, beginning with a summary of the

opinion below. The district court first decided that the parties had explicitly agreed to have the issue of arbitrability decided by the arbitrator. Notwithstanding this conclusion, the court then proceeded to analyze the issue of arbitrability itself. It determined that Dico would have the right to seek arbitration of the underlying claims if it had pursued them on its own behalf. The only remaining issue, the court reasoned, was whether the agreement's nonassignment clause prevented the defendants from asserting Dico's right to arbitrate. The court ruled that it did not because under Massachusetts law, a general nonassignment clause will be construed as barring only the delegation of duties, not the assignment of rights.

Apollo makes the following claims on appeal. First, it argues that the right to compel arbitration did not survive the termination of the agreement, so that even Dico would not have had the right to compel arbitration of the claims at issue. Second, it argues that even if Dico had the right to compel arbitration of the claims, it had not validly assigned that right to the defendants. Third, it argues that the agreement's nonassignment clause renders the purported assignment unenforceable against Apollo.

■■■■ We do not reach any of these arguments because we find that the parties contracted to submit issues of arbitrability to the arbitrator. There is no question that this contract falls under the aegis of the Federal Arbitration Act, 9 U.S.C. § 1, *et seq. See* 9 U.S.C. § 2; *Societe Generale de Surveillance, S.A. v. Raytheon European Management and Systems Co.*, 643 F.2d 863, 867 (1st Cir.1981). Both parties agree that under the Federal Arbitration Act, the *general* rule is that the arbitrability of a dispute is to be determined by the court. *See Necchi v. Necchi Sewing Machine Sales Corp.*, 348 F.2d 693, 696 (2d Cir.1965) (Marshall, J.), *cert. denied*, 383 U.S. 909, 86 S.Ct. 892, 15 L.Ed.2d 664 (1966); *Domke on*

---

**4.** If we adopt their rule, the defendants do not explain why they should not be hoisted on their petard. It would appear that their failure to file substantive counterclaims against Apollo bars them from subsequently litigating those claims, particularly since they are the only parties seeking affirmative relief.

*Commercial Arbitration* § 12.01, at 152; *see also AT & T Technologies, Inc. v. Communications Workers*, 475 U.S. 643, 649, 106 S.Ct. 1415, 1418, 89 L.Ed.2d 648 (1986) (reaffirming this general rule in the labor arbitration context); *Mobil Oil Corp. v. Local 8–766*, 600 F.2d 322, 324–25 (1st Cir. 1979) (same). Parties may, however, agree to allow the arbitrator to decide both whether a particular dispute is arbitrable as well as the merits of the dispute. *See Necchi*, 348 F.2d at 696; *see also Local 369, Utility Workers Union v. Boston Edison Co.*, 588 F.Supp. 800, 804–05 (D.Mass.) (recognizing same rule in labor arbitration context), *aff'd*, 752 F.2d 1 (1st Cir.1984).

■ In this case, the parties agreed that all disputes arising out of or in connection with their contract would be settled by binding arbitration "in accordance with the rules of arbitration of the International Chamber of Commerce." Article 8.3 of the ICC's Rules of Arbitration states:

> Should one of the parties raise one or more pleas concerning the existence or validity of the agreement to arbitrate, and should the [Court of Arbitration of the International Chamber of Commerce] be satisfied of the *prima facie* existence of such an agreement, the [Court of Arbitration of the International Chamber of Commerce] may, without prejudice to the admissibility or merits of the plea or pleas, decide that the arbitration shall proceed. In such a case, any decision as to the arbitrator's jurisdiction shall be taken by the arbitrator himself.

Article 8.4 of the ICC's Rules of Arbitration states:

> Unless otherwise provided, the arbitrator shall not cease to have jurisdiction by reason of any claim that the contract is null and void or allegation that it is inexistent provided that he upholds the validity of the agreement to arbitrate. He shall continue to have jurisdiction, even though the contract itself may be inexistent or null and void, to determine the respective rights of the parties and to adjudicate upon their claims and pleas.

The contract therefore delegates to the arbitrator decisions about the arbitrability of disputes involving the existence and validity of a *prima facie* agreement to arbitrate.

Both the ICC's Court of Arbitration and the district court determined that a *prima facie* agreement to arbitrate existed. Therefore, they reasoned, Article 8.3 requires the arbitrator to determine the validity of the arbitration agreement in this specific instance—in other words, decide whether the arbitration agreement applies to disputes between Apollo and the assignees of Dico.

Apollo did not discuss this issue in its brief. At oral argument, it averred that Article 8.3 is inapplicable because no *prima facie* agreement to arbitrate exists between it and the defendants. We are unpersuaded by this argument. The relevant agreement here is the one between Apollo and Dico. The defendants claim that Dico's right to compel arbitration under that agreement has been assigned to them. We find that they have made the *prima facie* showing required by Article 8.3. Whether the right to compel arbitration survives the termination of the agreement, and if so, whether that right was validly assigned to the defendants and whether it can be enforced by them against Apollo are issues relating to the continued existence and validity of the agreement.

Ordinarily, Apollo would be entitled to have these issues resolved by a court. *See, e.g., I.S. Joseph Co., Inc. v. Michigan Sugar Co.*, 803 F.2d 396, 399–400 (8th Cir. 1986); *American Safety Equipment Corp. v. J.P. Maguire & Co.*, 391 F.2d 821, 828–29 (2d Cir.1968). By contracting to have all disputes resolved according to the Rules of the ICC, however, Apollo agreed to be bound by Articles 8.3 and 8.4. These provisions clearly and unmistakably allow the arbitrator to determine her own jurisdiction when, as here, there exists a *prima facie* agreement to arbitrate whose continued existence and validity is being questioned. *See Societé Generale*, 643 F.2d at 869. The arbitrator should decide whether a valid arbitration agreement exists between Apollo and the defendants under the terms

of the contract between Apollo and Dico.[5] Consequently, without expressing any opinion on the merits of the issues raised by Apollo, we affirm the district court's order denying a permanent stay of the arbitration proceedings.

*Affirmed.*

## APPENDIX

The Arbitration Clause (§ 14.13) provides, in pertinent part, as follows:

All disputes arising out of or in connection with this Agreement which cannot be settled by discussion and mutual accord shall be finally settled by arbitration, in accordance with the rules of arbitration of the International Chamber of Commerce.... Judgment upon the award so rendered may be entered in any court having jurisdiction, or application may be made to such court for a judicial acceptance of the award and order of enforcement, as the case may be.

The Non–Assignment Clause (§ 14.02) provides as follows:

This Agreement shall inure to the benefit of and be binding upon DISTRIBUTOR and its successors and assigns but shall not be assignable by DISTRIBUTOR without the written consent first obtained of APOLLO. In the event DISTRIBUTOR wishes to delegate the performance of any of its obligations hereunder to a third party the written consent of APOLLO must first be obtained and APOLLO reserves the right to approve all terms of any such delegation. Any such purported assignment or delegation without written consent shall be void and of no effect.

The Termination Clause (§ 12.04) provides as follows:

Except as otherwise provided herein, termination or cancellation of this Agreement shall terminate all further rights and obligations of APOLLO and DISTRIBUTOR hereunder, provided that:

a) neither APOLLO nor DISTRIBUTOR shall be relieved of their respective obligations to pay any sums of money due or payable or accrued under this Agreement; and

b) if such termination or cancellation is a result of a breach hereof by a party hereto the other party shall be entitled to pursue any and all rights and remedies it has to redress such breach in law or equity, subject to the limitations [of liability provisions] set forth in Section 9 of this Agreement.

---

5. The fact that the arbitrability determination turns on complicated legal issues does not alter our conclusion, because contracting parties are at liberty to entrust an arbitrator with the resolution of such issues. *See Local 369, Utility* *Workers Union v. Boston Edison Co.,* 752 F.2d 1, 3 (1st Cir.1984); *George Day Constr. Co., Inc. v. United Brotherhood of Carpenters,* 722 F.2d 1471, 1475 (9th Cir.1984).