# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ANTONIO JACKSON,
        *Plaintiff-Appellant,*

v.

RENT-A-CENTER WEST, INC.,
        *Defendant-Appellee.*

No. 07-16164

D.C. No.
CV-07-00050-
LRH/RAM

OPINION

Appeal from the United States District Court
for the District of Nevada
Larry R. Hicks, District Judge, Presiding

Submitted November 21, 2008*
San Francisco, California

Filed September 9, 2009

Before: Cynthia Holcomb Hall, Thomas G. Nelson and
Sidney R. Thomas, Circuit Judges.

Opinion by Judge Thomas;
Dissent by Judge Hall

---

*The panel unanimously finds this case suitable for decision without
oral argument. *See* Fed. R. App. P. 34(a)(2).

12787

---

**COUNSEL**

Ian E. Silverberg, Hardy Law Group, Reno, Nevada, for the appellant.

Michael T. Garone, Schwabe, Williamson & Wyatt, Portland, Oregon, for the appellee.

---

**OPINION**

THOMAS, Circuit Judge:

Antonio Jackson appeals from a district court order dismissing his statutory race discrimination claim and compelling arbitration. Under the circumstances presented here, we

conclude that the district court was required to determine whether the arbitration agreement was unconscionable, and we remand for further proceedings.

I

Jackson was an employee of Rent-A-Center West, Inc. ("Employer"). On February 1, 2007, Jackson filed a complaint in the United States District Court for the District of Nevada alleging race discrimination and retaliation on the part of the Employer under 42 U.S.C. § 1981. The Employer moved to dismiss proceedings and compel arbitration, relying on a Mutual Agreement to Arbitrate Claims ("Agreement to Arbitrate," "Agreement") Jackson signed as a condition of his employment with the Employer when he was initially hired.[1] The Agreement specifically includes claims for discrimination in the list of claims that must be resolved by arbitration.

Of particular relevance to this appeal is a section of the Agreement entitled "Arbitration Procedures," which includes the following provision:

> The Arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this Agreement including, but not limited to any claim that all or any part of this Agreement is void or voidable.

The Employer argued in the district court that, in light of this provision, the threshold question of whether the arbitration agreement was valid and enforceable was for an arbitra-

---

[1]In the district court, the Employer filed the declaration of its Director of Compensation and Benefits stating that "[s]ince on or about July 2000, Rent-A-Center has required all new employees to agree to arbitrate all past, present, and future disputes."

tor, not the court. Jackson argued in response that the Agreement was unconscionable. In particular, he contended that the Agreement was substantively unconscionable because it contained one-sided coverage and discovery provisions and a provision specifying that the arbitrator's fee was to be equally shared by the parties. Jackson also argued that the Agreement was procedurally unconscionable because the form contract was presented to him as a non-negotiable condition of his employment.

The district court granted the Employer's motion to dismiss proceedings and compel arbitration. The court found that the Agreement to Arbitrate "clearly and unmistakenly provides the arbitrator with the exclusive authority to decide whether the Agreement to Arbitrate is enforceable" and held that "the question of arbitrability is for the arbitrator." The district court also held that, even if it were to reach the merits of Jackson's assertion that the Agreement was unconscionable, Jackson had not demonstrated that the Agreement was substantively unconscionable.

On appeal, Jackson challenges the district court's determination that enforceability of the Agreement to Arbitrate was a question for the arbitrator. He further argues that the district court erred in holding Jackson had not demonstrated the Agreement was substantively unconscionable. We review *de novo* a district court's decision to compel arbitration. *Bushley v. Credit Suisse First Boston*, 360 F.3d 1149, 1152 (9th Cir. 2004).

## II

The Federal Arbitration Act ("FAA") provides that agreements to arbitrate disputes "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2 (2000). While the FAA expresses a "liberal federal policy favoring arbitration agreements," *Green Tree Fin. Corp.-Ala.*

*v. Randolph*, 531 U.S. 79, 91 (2000) (internal quotation marks omitted), federal law "directs courts to place arbitration agreements on equal footing with other contracts," *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 293 (2002). Accordingly, under 9 U.S.C. § 2, "[a]rbitration agreements . . . are subject to all defenses to enforcement that apply to contracts generally." *Ingle v. Circuit City Stores, Inc.* 328 F.3d 1165, 1170 (9th Cir. 2003). The threshold question before us is whether a court or an arbitrator is to decide whether an arbitration agreement was unconscionable and hence unenforceable.

## A

**[1]** The Supreme Court has held that, as a matter of federal substantive arbitration law, when a party challenges the validity of a contract between the parties, but "not specifically its arbitration provisions," the challenge to the contract's validity should be considered by an arbitrator, not a court. *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 446 (2006). The flip side of this rule, however, is that when a party specifically challenges the validity of arbitration provisions within a larger contract, apart from the validity of the contract as a whole, a court decides the threshold question of the enforceability of the arbitration provisions. We applied this rule in *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1264 (9th Cir. 2006) (en banc), stating that "[w]hen the crux of the complaint is not the invalidity of the contract as a whole, but rather the arbitration provision itself, then the federal courts must decide whether the arbitration provision is invalid and unenforceable under 9 U.S.C. § 2." *See also Ingle,* 328 F.3d at 1170; *Ticknor v. Choice Hotels Int'l, Inc.*, 265 F.3d 931, 941 (9th Cir. 2001).

The rationale behind a rule requiring courts to make the threshold determination when the challenge specifically targets the validity of arbitration provisions is that arbitration is itself a matter of contract. "The duty to arbitrate being of contractual origin, a compulsory submission to arbitration cannot

precede judicial determination that the . . . agreement does in fact create such a duty." *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 547 (1964). Indeed, as a matter of federal arbitration law, a court may not compel arbitration until it is "satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue." 9 U.S.C. § 4 (2000). The FAA precludes state laws that single out arbitration provisions for special treatment, but does not allow federal courts to "shirk" their duty to consider, by applying the relevant state contract law principles, whether an "arbitration provision is invalid and unenforceable under 9 U.S.C. § 2 of the FAA." *Nagrampa*, 469 F.3d at 1264.

**[2]** Whether court or arbitrator is to determine arbitrability is more straightforward in this case than it was in *Nagrampa*, a case involving a challenge to arbitration provisions located within a larger "container contract." Jackson's merits dispute with the Employer does not arise out of a contract between them, but is rather based in federal statutory discrimination law. Jackson challenges the free-standing Agreement to Arbitrate he signed, contending that the Agreement is unconscionable and that he cannot be compelled to arbitrate his statutory discrimination claims.[2]

**[3]** We confronted a similar situation in *Davis v. O'Melveny & Myers*, 485 F.3d 1066 (9th Cir. 2007). There, we held that where the plaintiff brought claims for violation of overtime laws against her employer, whether the employer's arbitration agreement was unconscionable "is for a court to decide." *Id.* at 1072. Pursuant to *Buckeye*, *Nagrampa*, *Tick-*

---

[2]The district court incorrectly applied *Buckeye*'s rule that a global challenge to the validity of a container contract in which arbitration provisions are located is to be determined by the arbitrator. Jackson challenged the Agreement to Arbitrate itself and did not challenge the validity of a contract setting forth other substantive contractual obligations between the parties. Accordingly, the "severability" principle announced in *Buckeye* and the Court's earlier decision in *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395 (1967), does not apply.

*nor,* and *Davis*, we conclude that the question whether the Agreement was unconscionable was for the court to decide. The district court erred in concluding that unconscionability was an issue to be decided by the arbitrator.

B

**[4]** The Employer argues that the validity of the Agreement to Arbitrate must be determined by an arbitrator in accordance with the terms of the Agreement. The Employer relies on *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938 (1995), in which the Court stated that "[c]ourts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clea[r] and unmistakabl[e] evidence that they did so." *Id.* at 944 (quoting *AT&T Techs., Inc. v. Comm'ns Workers*, 475 U.S. 643, 649 (1986)). The Court explained this principle as based in the parties' expectations about whether court or arbitrator determines the issue of whether they agreed to arbitrate:

> [G]iven the principle that a party can be forced to arbitrate only those issues it specifically has agreed to submit to arbitration, one can understand why courts might hesitate to interpret silence or ambiguity on the "who should decide arbitrability" point as giving arbitrators that power, for doing so might too often force unwilling parties to arbitrate a matter they reasonably would have thought a judge, not an arbitrator, would decide.

*First Options*, 514 U.S. at 945.

**[5]** In contrast to *First Options*, we are not presented with "silence or ambiguity on the 'who should decide the arbitrability point.' " Jackson does not dispute that the language of the Agreement clearly assigns the arbitrability determination to the arbitrator. What he *does* dispute, however, is that he meaningfully agreed to the terms of the form Agreement to

Arbitrate, which he contends is procedurally and substantively unconscionable. Jackson argues that, in light of the parties' unequal bargaining power, the fact that the Agreement was presented as a non-negotiable condition of his employment, and the absence of any meaningful opportunity to modify the terms of the Agreement, he did not meaningfully assent to the Agreement.

**[6]** The Supreme Court has "determined that 'arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.' " *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (quoting *Steelworkers v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582 (1960)); *see also Gateway Coal Co. v. United Mine Workers of Am.*, 414 U.S. 368, 374 (1974) ("The law compels a party to submit his grievance to arbitration only if he has contracted to do so."). "[A]rbitration is simply a matter of contract between the parties; it is a way to resolve those disputes—but only those disputes—that the parties have agreed to submit to arbitration." *First Options*, 514 U.S. at 943. The Employer would have us limit our inquiry regarding whether the parties agreed to arbitrate arbitrability to the language of the contract. *First Options* indicates that the presumption—that courts determine whether parties agreed to arbitrate—can only be overcome with "clear and unmistakable evidence" of such an intent. *See id.* at 944. It did not suggest, however, that where arbitration provisions—unlike other contractual provisions—are concerned, clear contractual language is enforceable per se. Rather, the Court stated that "[w]hen deciding whether the parties agreed to arbitrate a certain matter (*including arbitrability*), courts generally . . . should apply ordinary state-law principles that govern the formation of contracts." *Id.* at 944 (emphasis added). The Court explained that "[j]ust as the arbitrability of the merits of a dispute depends upon whether the parties agreed to arbitrate that dispute, so the question 'who has the primary power to decide arbitrability' turns upon what the parties agreed about *that* matter." *Id.* at 943 (citations omitted). *First Options*, then,

directs that as a threshold matter the court must decide—by applying "ordinary state-law principles"—whether the parties agreed to arbitrate arbitrability.

**[7]** The Employer urges us to consider only that Jackson signed the Agreement, which contains language consigning the arbitrability question to the arbitrator. However, the FAA was enacted in part "to place arbitration agreements 'upon the same footing as other contracts.' " *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 511 (1974) (quoting H.R. Rep. No. 96, 68th Cong., 1st Sess., 1, 2 (1924)). To engage in an artificially contracted review of what the parties agreed to here would contravene this principle and violate the proper role of cooperative federalism. Rather, we hold that where, as here, a party challenges an arbitration agreement as unconscionable, and thus asserts that he could not meaningfully assent to the agreement, the threshold question of unconscionability is for the court.

## C

The Employer also relies on inapposite decisions from other circuits, which have held enforceable agreements between sophisticated commercial entities assigning the question of arbitrability to the arbitrator. *See Terminix Int'l Co., LP v. Palmer Ranch Ltd. P'ship*, 432 F.3d 1327, 1333 (11th Cir. 2005); *Contec Corp. v. Remote Solution Co.*, 398 F.3d 205, 208, 210-11 (2d Cir. 2005); *Apollo Computer, Inc. v. Berg*, 886 F.2d 469, 472-74 (1st Cir. 1989). *But see Microchip Tech. Inc. v. U.S. Philips Corp.*, 367 F.3d 1350, 1359 (Fed. Cir. 2004).

However, these cases are easily distinguishable. Unlike the case at bar, there were no allegations in these cases that the agreements were formed under circumstances of grossly unequal bargaining power. In none of these cases did the party resisting arbitration contend that there was no meaningful agreement to arbitrate in the first place.

Rather, the issue at hand is similar to the question confronted by the First Circuit in a case involving claims that a form agreement between parties of markedly unequal bargaining power was unconscionable. In *Awuah v. Coverall N. Am., Inc.*, 554 F.3d 7 (1st Cir. 2009), a class of franchisees sued a large commercial enterprise for fraud, misrepresentation, breach of contract, and violations of various labor laws. The corporation moved to compel arbitration with regard to three franchisees whose agreements contained arbitration clauses. These agreements incorporated by reference the Rules of the American Arbitration Association, which provide in relevant part that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement." *Id.* at 9. The franchisees responded that the arbitration agreements were unconscionable.

The First Circuit concluded that Supreme Court precedent did not determine the outcome, *id.* at 10-11, and followed its own precedent in *Apollo Computer,* 886 F.2d at 472-74, holding that the language incorporated by reference into the agreement was "about as 'clear and unmistakable' as language can get." *Id.* at 11 (citation omitted). Nonetheless, the *Awuah* court did not limit its inquiry to the agreement's language. Rather, the court stated:

> In principle, having the arbitrator decide questions of validity may be fine if the parties so agreed; but if the terms for getting an arbitrator to decide the issue are impossibly burdensome, that outcome would indeed raise public policy concerns. If arbitration prevents plaintiffs from vindicating their rights, it is no longer a valid alternative to traditional litigation.

*Id.* at 12 (quotations omitted). The court held that "appellees are entitled to a ruling by [the district] court as to whether the arbitration remedy in this case is illusory." *Id.* at 13. The First Circuit was careful to state that its "concern here is not with

unconscionability—essentially a fairness issue—but more narrowly with whether the arbitration regime here is structured so as to *prevent* a litigant from having access to the arbitrator to resolve claims, including unconscionability defenses." *Id.* (internal citation omitted). In short, the First Circuit held that where a contract delegates determination of whether an arbitration provision is enforceable to the arbitrator, a party challenging the provision is entitled to have a court determine whether "the arbitration remedy is illusory."

**[8]** We agree with the First Circuit that, where a party to an agreement to arbitrate contends that the arbitration agreement in particular was unconscionable and that he made no meaningful choice to enter the agreement, summary enforcement of the agreement is improper. However, while the First Circuit stated that the threshold inquiry it mandated did not encompass unconscionability, we hold that where a party specifically challenges arbitration provisions as unconscionable and hence invalid, whether the arbitration provisions are unconscionable is an issue for the court to determine, applying the relevant state contract law principles. This rule applies even where the agreement's express terms delegate that determination to the arbitrator. We hold that where, as here, an arbitration agreement delegates the question of the arbitration agreement's validity to the arbitrator, a dispute as to whether the agreement to arbitrate arbitrability is itself enforceable is nonetheless for the court to decide as a threshold matter.

III

We next address the district court's alternate holding that the Agreement to Arbitrate was not unconscionable, and was therefore enforceable. The agreement in this case was formed in Nevada. Nevada law permits the invalidation of arbitration provisions if they are both substantively and procedurally unconscionable. *D.R. Horton, Inc. v. Green*, 96 P.3d 1159, 1162-63 (Nev. 2004). Substantive unconscionability arises when contract terms are one-sided. *Id.* Jackson claims that

three aspects of the agreement are one-sided: (1) claim coverage, (2) costs, and (3) discovery. Though all three issues were argued to the district court below, that court only addressed one of them, determining that the provision regarding costs was not substantively unconscionable.

The district court did not err in determining that the cost provision was not substantively unconscionable. The arbitration agreement provided that the parties would share costs equally, unless the law of the jurisdiction where the arbitration would be held required otherwise, in which case that law would be followed. Jackson argues that, because this might subject him to costs greater than those usually associated with litigation, the provision is substantively unconscionable.

In evaluating cost one-sidedness, the Supreme Court of Nevada has held that "[o]rdinary consumers may not always have the financial means to pursue their legal remedies, and significant arbitration costs greatly increase that danger. In such a circumstance, the contract would lack [a] modicum of bilaterality." *Id.* at 1165 (internal quotation marks omitted). Discussing a challenge to the equal sharing of fees, the court cited our precedent invalidating such fee provisions and said that the agreement's "silence regarding potentially significant arbitration costs does not, alone, render the agreement unenforceable . . . . [but may be] properly considered . . . in examining the asymmetrical effects of the provision." *Id.* (citing *Ting v. AT & T*, 319 F.3d 1126, 1148-49 (9th Cir. 2003)).

**[9]** In this case, the agreement contains both a fee-sharing provision and the potential for undisclosed significant arbitration costs. Nonetheless, *D.R. Horton* held that silence about those potential costs was not enough standing alone to find an agreement unenforceable. *Id.* Jackson presented no evidence suggesting prohibitive costs would *actually* be incurred and so did not meet his burden of establishing the fee-sharing provision and silence regarding potentially significant arbitration

costs render the arbitration agreement unconscionable. *See Green Tree Fin. Corp.-Ala.*, 531 U.S. at 92.

**[10]** Furthermore, the fee-sharing provision specifically states that "[i]n the event the law of the jurisdiction in which the arbitration is held requires a different allocation of fees and costs in order for this Agreement to be enforceable, then such law shall be followed." In other words, the agreement itself effectively states that the fee-sharing provision is inapplicable if it is unconscionable under Nevada law. Jackson fails to address or counter this argument. For these reasons, we conclude that the district court correctly determined that the costs provision was not substantively unconscionable.

**[11]** However, the district court did not address Jackson's remaining arguments about substantive unconscionability, namely, that the Agreement's coverage and discovery provisions were one-sided and unfairly favored the Employer. Therefore, we must vacate the judgment and remand for the district court to complete its analysis of substantive unconscionability.[3]

IV

In sum, we conclude that a court must decide the threshold question of arbitrability when a plaintiff challenges an arbitration agreement as unconscionable, but the agreement provides that the enforceability of the arbitration agreement is itself an issue to be resolved through arbitration. We remand for further proceedings consistent with this opinion. The parties shall each bear their own costs on appeal.

---

[3]The district court did not address procedural unconscionability because it found no substantive unconscionability, and both prongs must be met for a finding of unconscionability. If the district court determines on remand that the agreement is substantively unconscionable, then it should determine whether the agreement is procedurally unconscionable.

**AFFIRMED IN PART; REVERSED IN PART; REMANDED.**

---

HALL, Circuit Judge, dissenting:

This case concerns an arbitration agreement more favorable to the employee than most this court sees. It stated plainly that the arbitrator had the exclusive authority to resolve any dispute regarding the agreement's validity. It permitted modification or revocation by the parties. It allowed Jackson the chance to review it with an attorney prior to signing. In these respects, this was not even a run-of-the-mill arbitration agreement.[1] Jackson's allegations of unconscionability are also vaguer than most.[2] He claims, without any specifics, that the agreement was a condition of his employment and non-negotiable, although the latter is contradicted by the agreement itself. He claims that the agreement lacks mutuality, imposes burdensome costs, and includes one-sided discovery, but only speculates that his costs might exceed the expense of litigation and concedes that the discovery provision is not alone unconscionable. So what we have, then, is an arbitration agreement more favorable than most and unconscionability allegations that are thinner than most.

---

[1]Compare these provisions with others this court has seen. *See, e.g.*, *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1265, 1281, 1283 (9th Cir. 2006) (describing a non-negotiable agreement which addressed some rules by cross-reference only and where the party resisting arbitration claimed she was not even informed about the arbitration provision on page twenty-five of a thirty-page agreement).

[2]*Nagrampa*, for example, involved a complaint which asserted causes of action challenging the validity of the arbitration agreement and included forty-one allegations stating facts supporting the causes of action. *See id.* at 1264, 1266, 1270, 1283. Jackson's complaint is silent as to the arbitration agreement. Vague allegations appear in his opposition to Rent-a-Center's motion to compel arbitration and are repeated verbatim in the brief to this court.

Nonetheless, the majority's opinion will send this case (not to mention all those run-of-the-mill ones) to a mini-trial in the district court to determine an agreement's validity based on just the bare allegation of unconscionability, *even* when the contract language "clearly and unmistakably" chooses a different forum for that question. This is counter to the general policy favoring arbitration of disputes. *See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985) (counseling the resolution of "any doubts concerning the scope of arbitrable issues . . . in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability"). It also makes it difficult to understand what the Supreme Court meant when it said that, although the general rule gives the threshold question of arbitrability to courts, parties may provide for the arbitrator to decide the question instead if they do so "clearly and unmistakably." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986). The exception begins to look very much like the general rule in that courts will be deciding the question of agreement validity under both scenarios, regardless of what the agreement's language might say about the chosen forum for that question.

In *First Options v. Kaplan, Inc.*, the Supreme Court said a court should not find an agreement "clear and unmistakable" if there is any "silence or ambiguity."**³** 514 U.S. 938, 944 (1995) (alterations omitted); *cf. EEOC v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002) ("Absent some ambiguity in the agreement, it is the language of the contract that defines the scope of disputes subject to arbitration."). The majority

---

**³**The majority cites *First Options*' statements that "ordinary state-law principles" should be applied to the question of arbitrability, but neglects to mention that these statements came in the context of the Court's discussion of the general rule wherein courts decide the question, rather than the "important qualification" to that rule which is at issue here. 514 U.S. at 944.

admits there is no silence or ambiguity here. In *Awuah v. Coverall North America, Inc.*, the out-of-circuit case most on point, the First Circuit found an allegedly unconscionable agreement to be "about as 'clear and unmistakable' " as it could be in stating that agreement validity was for the arbitrator to decide.[4] 554 F.3d 7, 11 (1st Cir. 2009). The majority admits the language is similarly clear and unmistakable here. In light of this, I believe the question of the arbitration agreement's validity should have gone to the arbitrator, as the parties "clearly and unmistakably provide[d]" in their agreement.[5]

The majority opinion cites *First Options* and *Awuah*, but then expands the district court's inquiry beyond what those cases envisioned. I respectfully disagree with this expansion. Furthermore, to the extent the district court has a role to play

---

[4]According to the majority, *Awuah* held that "where a party to an agreement to arbitrate contends that the arbitration agreement in particular was unconscionable and that he made no meaningful choice to enter the agreement, summary enforcement of the agreement is improper." Thomas Op. at 12799. I respectfully disagree. *Awuah* explicitly said its concern was not with unconscionability, and instead held that a district court only has the very limited role of determining "whether the arbitration regime . . . is structured so as to prevent a litigant from having access to the arbitrator." *See* 554 F.3d at 13 (emphasis omitted). Thus, even if an agreement was alleged to be unconscionable, enforcement of the parties' agreement to send that question to arbitration would still be proper unless the party resisting arbitration met the "high" burden of showing that the arbitration was an illusory remedy. *Id.*

[5]The majority cites section 2 of the FAA (and cases referencing that section) regarding the enforceability of unconscionable arbitration agreements. *See* 9 U.S.C. § 2; *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1170 (9th Cir. 2003); *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1264 (9th Cir. 2006). However, everyone agrees that unconscionable arbitration agreements should not be enforced. At issue here is *who* should decide if the agreement is unconscionable when the parties' agreement gives the question to the arbitrator. That issue is not addressed by section two of the FAA. Nor is it addressed by any of the other cases the majority cites, with the exception of *Awuah*, which, as discussed above, supports finding that the parties in this case "clearly and unmistakably" consigned the agreement's validity to arbitration.

here, it should certainly be a more limited one than the majority envisions, perhaps permitting courts to remain attuned to "*well-supported*" claims of unconscionability or the potential that arbitration might be illusory, while still resolving "any doubts" as to what the parties agreed in favor of arbitration. *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626-27 (1985) (emphasis added); *Awuah*, 554 F.3d at 13 (finding a "narrow[ ]" remand appropriate to determine, not unconscionability, but instead whether the litigant could meet a "high" burden to show that arbitration was "truly illusory"); *see also United Steelworkers of Am. v. Am. Mfg. Co.*, 363 U.S. 564, 567-68 (1960) ("The function of the court is very limited when the parties have agreed to submit all questions of contract interpretation to the arbitrator. It is confined to ascertaining whether the party seeking arbitration is making a claim which on its face is governed by the contract).

For these reasons, I dissent.