*65 Justice Scalia
delivered the opinion of the Court.
We consider whether, under the Federal Arbitration Act (FAA or Act), 9 U. S. C. §§ 1-16, a district court may decide a claim that an arbitration agreement is unconscionable, where the agreement explicitly assigns that decision to the arbitrator.
I
On February 1, 2007, the respondent here, Antonio Jackson, filed an employment-discrimination suit under Rev. Stat. § 1977, 42 U. S. C. § 1981, against his former employer in the United States District Court for the District of Nevada. The defendant and petitioner here, Rent-A-Center, West, Inc., filed a motion under the FAA to dismiss or stay the proceedings, 9 U. S. C. § 3, and to compel arbitration, § 4. Rent-A-Center argued that the Mutual Agreement to Arbitrate Claims (Agreement), which Jackson signed on February 24, 2003, as a condition of his employment there, precluded Jackson from pursuing his claims in court. The Agreement provided for arbitration of all “past, present or future” disputes arising out of Jackson’s employment with Rent-A-Center, including “claims for discrimination” and *66 “claims for violation of any federal . . . law.” App. 29-30. It also provided that “[t]he Arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this Agreement including, but not limited to any claim that all or any part of this Agreement is void or voidable.” Id., at 34.
Jackson opposed the motion on the ground that “the arbitration agreement in question is clearly unenforceable in that it is unconscionable” under Nevada law. Id., at 40. Rent-A-Center responded that Jackson’s unconscionability claim was not properly before the court because Jackson had expressly agreed that the arbitrator would have exclusive authority to resolve any dispute about the enforceability of the Agreement. It also disputed the merits of Jackson’s unconscionability claims.
The District Court granted Rent-A-Center’s motion to dismiss the proceedings and to compel arbitration. The court found that the Agreement “'“clearly and unmistakenly [sic]”’” gives the arbitrator exclusive authority to decide whether the Agreement is enforceable, App. to Pet. for Cert. 4a (quoting Howsam v. Dean Witter Reynolds, Inc., 537 U. S. 79, 83 (2002)), and, because Jackson challenged the validity of the Agreement as a whole, the issue was for the arbitrator, App. to Pet. for Cert. 4a (citing Buckeye Check Cashing, Inc. v. Cardegna, 546 U. S. 440, 444-445 (2006)). The court noted that even if it were to examine the merits of Jackson’s unconscionability claims, it would have rejected the claim that the agreement to split arbitration fees was substantively unconscionable under Nevada law. It did not address Jackson’s procedural or other substantive unconscionability arguments.
Without oral argument, a divided panel of the Court of Appeals for the Ninth Circuit reversed in part, affirmed in part, and remanded. 581 F. 3d 912 (2009). The court reversed on the question of who (the court or arbitrator) had *67 the authority to decide whether the Agreement is enforceable. It noted that “Jackson does not dispute that the language of the Agreement clearly assigns the arbitrability determination to the arbitrator,” but held that where “a party challenges an arbitration agreement as unconscionable, and thus asserts that he could not meaningfully assent to the agreement, the threshold question of unconscionability is for the court.” Id., at 917. The Ninth Circuit affirmed the District Court’s alternative conclusion that the fee-sharing provision was not substantively unconscionable and remanded for consideration of Jackson’s other unconscionability arguments. Id., at 919-921, and n. 3. Judge Hall dissented on the ground that “the question of the arbitration agreement’s validity should have gone to the arbitrator, as the parties 'clearly and unmistakably provide[d]’ in their agreement.” Id., at 921.
We granted certiorari, 558 U. S. 1142 (2010).
II
A
The FAA reflects the fundamental principle that arbitration is a matter of contract. Section 2, the “primary substantive provision of the Act,” Moses H. Cone Memorial Hospital v. Mercury Constr. Corp., 460 U. S. 1, 24 (1983), provides:
“A written provision in ... a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.” 9 U. S. C. §2.
The FAA thereby places arbitration agreements on an equal footing with other contracts, Buckeye, supra, at 443, and requires courts to enforce them according to their terms, Volt Information Sciences, Inc. v. Board of Trustees of Le *68 land, Stanford Junior Univ., 489 U. S. 468, 478 (1989). Like other contracts, however, they may be invalidated by “generally applicable contract defenses, such as fraud, duress, or unconscionability.” Doctor’s Associates, Inc. v. Casarotto, 517 U. S. 681, 687 (1996).
The Act also establishes procedures by which federal courts implement § 2’s substantive rule. Under § 3, a party may apply to a federal court for a stay of the trial of an action “upon any issue referable to arbitration under an agreement in writing for such arbitration.” Under §4, a party “aggrieved” by the failure of another party “to arbitrate under a written agreement for arbitration” may petition a federal court “for an order directing that such arbitration proceed in the manner provided for in such agreement.” The court “shall” order arbitration “upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue.” Ibid.
The Agreement here contains multiple “written provisiones]” to “settle by arbitration a controversy,” §2. Two are relevant to our discussion. First, the section titled “Claims Covered By The Agreement” provides for arbitration of all “past, present or future” disputes arising out of Jackson’s employment with Rent-A-Center. App. 29. Second, the section titled “Arbitration Procedures” provides that “[t]he Arbitrator . . . shall have exclusive authority to resolve any dispute relating to the . . . enforceability ... of this Agreement including, but not limited to any claim that all or any part of this Agreement is void or voidable.” Id., at 32, 34. The current “controversy” between the parties is whether the Agreement is unconscionable. It is the second provision, which delegates resolution of that controversy to the arbitrator, that Rent-A-Center seeks to enforce. Adopting the terminology used by the parties, we will refer to it as the delegation provision.
The delegation provision is an agreement to arbitrate threshold issues concerning the arbitration agreement. We have recognized that parties can agree to arbitrate “gate *69 way” questions of “arbitrability,” such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy. See, e. g., Howsam, 537 U. S., at 83-85; Green Tree Financial Corp. v. Bazzle, 539 U. S. 444, 452 (2003) (plurality opinion). This line of cases merely reflects the principle that arbitration is a matter of contract.[1] See First Options of Chicago, Inc. v. Kaplan, 514 U. S. 938, *70 943 (1995). An agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other. The additional agreement is valid under §2 “save upon such grounds as exist at law or in equity for the revocation of any contract,” and federal courts can enforce the agreement by staying federal litigation under §3 and compelling arbitration under §4. The question before us, then, is whether the delegation provision is valid under § 2.
B
There are two types of validity challenges under § 2: “One type challenges specifically the validity of the agreement to arbitrate,” and “[t]he other challenges the contract as a whole, either on a ground that directly affects the entire agreement (e. g., the agreement was fraudulently induced), or on the ground that the illegality of one of the contract’s provisions renders the whole contract invalid.” Buckeye, 546 U. S., at 444. In a line of cases neither party has asked us to overrule, we held that only the first type of challenge is relevant to a court’s determination whether the arbitration agreement at issue is enforceable.[2] See Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U. S. 395, 403-404 (1967); Buckeye, supra, at 444-446; Preston v. Ferrer, 552 U. S. 346, 353-354 (2008). That is because §2 states that a “written provision” “to settle by arbitration a controversy” is “valid, irrevocable, and enforceable” without mention of the validity of the contract in which it is contained. Thus, a party’s challenge to another provision of the contract, or to the contract as a whole, does not prevent a court from enforcing a specific agreement to arbitrate. “[A]s a matter of substantive fed *71 eral arbitration law, an arbitration provision is severable from the remainder of the contract.” Buckeye, 546 U. S., at 445; see also id., at 447 (the severability rule is based on § 2).
But that agreements to arbitrate are severable does not mean that they are unassailable. If a party challenges the validity under §2 of the precise agreement to arbitrate at issue, the federal court must consider the challenge before ordering compliance with that agreement under §4. In Prima Paint, for example, if the claim had been “fraud in the inducement of the arbitration clause itself,” then the court would have considered it. 388 U. S., at 403-404. “To immunize an arbitration agreement from judicial challenge on the ground of fraud in the inducement would be to elevate it over other forms of contract,” id., at 404, n. 12. In some cases the claimed basis of invalidity for the contract as a whole will be much easier to establish than the same basis as applied only to the severable agreement to arbitrate. Thus, in an employment contract many elements of alleged unconscionability applicable to the entire contract (outrageously low wages, for example) would not affect the agreement to arbitrate alone. But even where that is not the case — as in Prima Paint itself, where the alleged fraud that induced the whole contract equally induced the agreement to arbitrate which was part of that contract — we nonetheless require the basis of challenge to be directed specifically to the agreement to arbitrate before the court will intervene.
Here, the “written provision ... to settle by arbitration a controversy,” 9 U. S. C. § 2, that Rent-A-Center asks us to enforce is the delegation provision — the provision that gave the arbitrator “exclusive authority to resolve any dispute relating to the . .. enforceability ... of this Agreement,” App. 34. The “remainder of the contract,” Buckeye, supra, at 445, is the rest of the agreement to arbitrate claims arising out of Jackson’s employment with Rent-A-Center. To be sure this case differs from Prima Paint, Buckeye, and Pres *72 ton, in that the arbitration provisions sought to be enforced in those cases were contained in contracts unrelated to arbitration — contracts for consulting services, see Prima Paint, supra, at 397, check-cashing services, see Buckeye, supra, at 442, and “personal management” or “talent agent” services, see Preston, supra, at 352. In this case, the underlying contract is itself an arbitration agreement. But that makes no difference.[3] Application of the severability rule does not depend on the substance of the remainder of the contract. Section 2 operates on the specific “written provision” to “settle by arbitration a controversy” that the party seeks to enforce. Accordingly, unless Jackson challenged the delegation provision specifically, we must treat it as valid under § 2, and must enforce it under §§ 3 and 4, leaving any challenge to the validity of the Agreement as a whole for the arbitrator.
C
The District Court correctly concluded that Jackson challenged only the validity of the contract as a whole. Nowhere in his opposition to Rent-A-Center’s motion to compel arbitration did he even mention the delegation provision. See App. 39-47. Rent-A-Center noted this fact in its reply: *73 “[Jackson’s response] fails to rebut or otherwise address in any way [Rent-A-Center’s] argument that the Arbitrator must decide [Jackson’s] challenge to the enforceability of the Agreement. Thus, [Rent-A-Center’s] argument is uncontested.” Id., at 50 (emphasis in original).
The arguments Jackson made in his response to Rent-A-Center’s motion to compel arbitration support this conclusion. Jackson stated that “the entire agreement seems drawn to provide [Rent-A-Center] with undue advantages should an employment-related dispute arise.” Id., at 44 (emphasis added). At one point, he argued that the limitations on discovery “further suppor[t] [his] contention that the arbitration agreement as a whole is substantively unconscionable.” Ibid, (emphasis added). And before this Court, Jackson describes his challenge in the District Court as follows: He “opposed the motion to compel on the ground that the entire arbitration agreement, including the delegation clause, was unconscionable.” Brief for Respondent 55 (emphasis added). That is an accurate description of his filings.
As required to make out a claim of unconscionability under Nevada law, see 581 F. 3d, at 919, he contended that the Agreement was both procedurally and substantively unconscionable. It was procedurally unconscionable, he argued, because it “was imposed as a condition of employment and was non-negotiable.” App. 41. But we need not consider that claim because none of Jackson’s substantive unconscionability challenges was specific to the delegation provision. First, he argued that the Agreement’s coverage was one sided in that it required arbitration of claims an employee was likely to bring — contract, tort, discrimination, and statutory claims — but did not require arbitration of claims Rent-A-Center was likely to bring — intellectual property, unfair competition, and trade secrets claims. Id., at 42-43. This one-sided-coverage argument clearly did not go to the validity of the delegation provision.
*74 Jackson’s other two substantive unconscionability arguments assailed arbitration procedures called for by the contract — the fee-splitting arrangement and the limitations on discovery — procedures that were to be used during arbitration under both the agreement to arbitrate employment-related disputes and the delegation provision. It may be that had Jackson challenged the delegation provision by arguing that these common procedures as applied to the delegation provision rendered that provision unconscionable, the challenge should have been considered by the court. To make such a claim based on the discovery procedures, Jackson would have had to argue that the limitation upon the number of depositions causes the arbitration of his claim that the Agreement is unenforceable to be unconscionable. That would be, of course, a much more difficult argument to sustain than the argument that the same limitation renders arbitration of his factbound employment-discrimination claim unconscionable. Likewise, the unfairness of the fee-splitting arrangement may be more difficult to establish for the arbitration of enforceability than for arbitration of more complex and fact-related aspects of the alleged employment discrimination. Jackson, however, did not make any arguments specific to the delegation provision; he argued that the fee-sharing and discovery procedures rendered the entire Agreement invalid.
Jackson’s appeal to the Ninth Circuit confirms that he did not contest the validity of the delegation provision in particular. His brief noted the existence of the delegation provision, Brief for Appellant in No. 07-16164, p. 3, but his unconscionability arguments made no mention of it, id., at 3-7. He also repeated the arguments he had made before the District Court, see supra, at 73, that the “entire agreement” favors Rent-A-Center and that the limitations on discovery further his “contention that the arbitration agreement as a whole is substantively unconscionable,” Brief for Appellant *75 7-8. Finally, he repeated the argument made in his District Court filings, that under state law the unconscionable clauses could not be severed from the arbitration agreement, see id., at 8-9.[4] The point of this argument, of course, is that the Agreement as a whole is unconscionable under state law.
Jackson repeated that argument before this Court. At oral argument, counsel stated: “There are certain elements of the arbitration agreement that are unconscionable and, under Nevada law, which would render the entire arbitration agreement unconscionable.” Tr. of Oral Arg. 43 (emphasis added). And again, he stated, “we’ve got both certain provisions that are unconscionable, that under Nevada law render the entire agreement unconscionable . . . , and that’s what the Court is to rely on.” Id., at 43-44 (emphasis added).
In his brief to this Court, Jackson made the contention, not mentioned below, that the delegation provision itself is substantively unconscionable because the quid pro quo he was supposed to receive for it — that “in exchange for initially allowing an arbitrator to decide certain gateway questions,” he would receive “plenary post-arbitration judicial review”— was eliminated by the Court’s subsequent holding in Hall Street Associates, L. L. C. v. Mattel, Inc., 552 U. S. 576 (2008), that the nonplenary grounds for judicial review in § 10 of the FAA are exclusive. Brief for Respondent 59-60. He brought this challenge to the delegation provision too late, *76 and we will not consider it.[5] See 14 Penn Plaza LLC v. Pyett, 556 U. S. 247, 273-274 (2009).
We reverse the judgment of the Court of Appeals for the Ninth Circuit.

It is so ordered.

 There is one caveat. First Options of Chicago, Inc. v. Kaplan, 514 U. S. 938, 944 (1995), held that “[ejourts should not assume that the parties agreed to arbitrate arbitrability unless there is ‘clea[r] and unmistakablfe]’ evidence that they did so.” The parties agree the heightened standard applies here. See Brief for Petitioner 21; Brief for Respondent 54. The District Court concluded the “Agreement to Arbitrate clearly and unmistakenly [sic] provides the arbitrator with the exclusive authority to decide whether the Agreement to Arbitrate is enforceable.” App. to Pet. for Cert. 4a. The Ninth Circuit noted that Jackson did not dispute that the text of the Agreement was clear and unmistakable on this point. 581 F. 3d 912, 917 (2009). He also does not dispute it here. What he argues now, however, is that it is not “clear and unmistakable” that his agreement to that text was valid, because of the unconscionability claims he raises. See Brief for Respondent 54-55. The dissent makes the same argument. See post, at 80-82 (opinion of Stevens, J.).
This mistakes the subject of the First Options “clear and unmistakable” requirement. It pertains to the parties’ manifestation of intent, not the agreement’s validity. As explained in Howsam v. Dean Witter Reynolds, Inc., 537 U. S. 79, 83 (2002), it is an “interpretive rule,” based on an assumption about the parties’ expectations. In “circumstance[s] where contracting parties would likely have expected a court to have decided the gateway matter,” ibid., we assume that is what they agreed to. Thus, “[u]nless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator.” AT&T Technologies, Inc. v. Communications Workers, 475 U. S. 643, 649 (1986).
The validity of a written agreement to arbitrate (whether it is legally binding, as opposed to whether it was in fact agreed to — including, of course, whether it was void for unconscionability) is governed by §2’s provision that it shall be valid “save upon such grounds as exist at law or in equity for the revocation of any contract.” Those grounds do not include, of course, any requirement that its lack of unconscionability must be “clear and unmistakable.” And they are not grounds that First Options added for agreements to arbitrate gateway issues; § 2 applies to all written agreements to arbitrate.

 The issue of the agreement’s “validity” is different from the issue whether any agreement between the parties “was ever concluded,” and, as in Buckeye Check Cashing, Inc. v. Cardegna, 546 U. S. 440 (2006), we address only the former. Id., at 444, n. 1.

 The dissent calls this a “breezy assertion,” post, at 77, but it seems to us self-evident. When the dissent comes to discussing the point, post, at 85-86, it gives no logical reason why an agreement to arbitrate one controversy (an employment-discrimination claim) is not severable from an agreement to arbitrate a different controversy (enforceability). There is none. Since the dissent accepts that the invalidity of one provision within an arbitration agreement does not necessarily invalidate its other provisions, post, at 81-82, n. 7, it cannot believe in some sort of magic bond between arbitration provisions that prevents them from being severed from each other. According to the dissent, it is fine to sever an invalid provision within an arbitration agreement when severability is a matter of state law, but severability is not allowed when it comes to applying Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U. S. 395 (1967).

 Jackson’s argument fails. The severability rule is a “matter of substantive federal arbitration law,” and we have repeatedly “rejected the view that the question of ‘severability’ was one of state law, so that if state law held the arbitration provision not to be severable a challenge to the contract as a whole would be decided by the court.” Buckeye, 546 U. S., at 445 (citing Prima Paint, 388 U. S., at 400, 402-403; Southland Corp. v. Keating, 465 U. S. 1, 10-14 (1984); Allied-Bruce Terminix Cos. v. Dobson, 513 U. S. 265, 270-273 (1995)). For the same reason, the Agreement’s statement that its provisions are severable, see App. 37, does not affect our analysis.

 Hall Street Associates, L. L. C. v. Mattel, Inc., 552 U. S. 576 (2008), was decided after Jackson submitted his brief to the Ninth Circuit, but that does not change our conclusion that he forfeited the argument. Jackson could have submitted a supplemental brief during the year and a half between this Court’s decision of Hall Street on March 25, 2008, and the Ninth Circuit’s judgment on September 9, 2009. Moreover, Hall Street affirmed a rule that had been in place in the Ninth Circuit since 2003. Id., at 583-584, and n. 5.