MONEX DEPOSIT CO.,
et al., Plaintiffs,

v.

Jason GILLIAM, et al., Defendants.

Case No. SACV 09–287 JVS(RNBx).

United States District Court,
C.D. California.

Nov. 24, 2009.

C. Scott Andrews, Neil A. Goteiner, Farella Braun & Martel LLP, San Francisco, CA,

Jason Gilliam, Laguna Woods, CA, pro se.

Richard Gilliam, Laguna Woods, CA, pro se.

## ORDER RE MOTION TO COMPEL ARBITRATION

JAMES V. SELNA, District Judge.

Counter Defendants Monex Deposit Company ("MDC") and Monex Credit Company ("MCC") (collectively, "Monex") move the Court for an order compelling arbitration of Counter Plaintiff Richard Gilliam's [1] counterclaims and staying the

counterclaims pending arbitration pursuant to 9 U.S.C. §§ 3 and 4. Richard Gilliam, who is proceeding *pro se,* opposes the motion. The Court GRANTS the motion.

### I. Legal Standard

 Under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.,* any party bound to an arbitration agreement that falls within the scope of the FAA may bring a motion in federal district court to compel arbitration and stay the proceeding pending resolution of the arbitration. *Id.* §§ 3, 4. The FAA eliminates district court discretion and requires the court to compel arbitration of issues covered by the arbitration agreement. *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 218, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985). The FAA limits the district court's role to determining whether a valid agreement to arbitrate exists, and whether the agreement encompasses the disputes at issue. *Chiron Corp. v. Ortho Diagnostic Sys., Inc.,* 207 F.3d 1126, 1130 (9th Cir.2000). However, "where a party specifically challenges arbitration provisions as unconscionable and hence invalid, whether the arbitration provisions are unconscionable is an issue for the court to determine, applying the relevant state contract law principles. This rule applies even where the agreement's express terms delegate that determination to the arbitrator." *Jackson v. Rent–A–Center West, Inc.,* 581 F.3d 912, 918–19 (9th Cir.2009).

### II. Discussion

A. *The Ninth Circuit's Decision in Jackson Requires the Court to Decide Whether the Arbitration Agreement is Unconscionable*

The parties disagree as to the relevance of the Ninth Circuit's recent decision in

---

**1.** The Court uses Richard Gilliam's full name throughout, in order to avoid confusion with co-defendant Jason Gilliam.

*Jackson v. Rent–A–Center West, Inc.* Richard Gilliam argues that *Jackson* requires the Court to evaluate whether the arbitration agreement is unconscionable. Monex disagrees, arguing that the *Jackson* holding is limited to the factual circumstances in that case and, given a different set of facts here, *Jackson* does not require the Court to decide whether the arbitration agreement is unconscionable. The Court concludes that the *Jackson* decision applies not just to the factual circumstances in that case, but to all arbitration agreements that are challenged as unconscionable.

The *Jackson* holding, on its face, does not appear to be limited to a particular factual circumstance. The *Jackson* majority explicitly recited its holding multiple times. The first formulation reads: "[W]e hold that where, as here, a party challenges an arbitration agreement as unconscionable, and thus asserts that he could not meaningfully assent to the agreement, the threshold question of unconscionability is for the court." *Id.* at 917. The *Jackson* majority later provided a second, more detailed formulation of its holding:

> [W]e hold that where a party specifically challenges arbitration provisions as unconscionable and hence invalid, whether the arbitration provisions are unconscionable is an issue for the court to determine, applying the relevant state contract law principles. This rule applies even where the agreement's express terms delegate that determination to the arbitrator. We hold that where, as here, an arbitration agreement delegates the question of the arbitration agreement's validity to the arbitrator, a dispute as to whether the agreement to arbitrate arbitrability is itself enforceable is nonetheless for the court to decide as a threshold matter.

*Id.* at 918–19. The only limitation to the applicability of this holding is whether the arbitration agreement was challenged as unconscionable. No attempt was made by the *Jackson* majority to limit the holding to a particular factual circumstance supporting an allegation of unconscionability.[2]

Additionally, the *Jackson* majority also described the issue before them in general terms: "The threshold question before us is whether a court or an arbitrator is to decide whether an arbitration agreement was unconscionable and hence unenforceable." *Id.* at 915. This statement of the issue lacks any evidence that the court was limiting itself to a particular factual circumstance. Moreover, Judge Hall's dissent suggests that she believed that the majority's holding was not limited to particular factual circumstances. After observing that *Jackson* involved an "arbitration agreement more favorable to the employee than most this court sees" and "not even a run-of-the-mill arbitration agreement," Judge Hall concluded that "the majority's opinion will send this case (not to mention all those run-of-the-mill ones) to a mini-trial in the district court to determine an agreement's validity based on just the bare allegation of unconscionability, even when the contract language 'clearly and unmistakably' chooses a different forum for that question." *Id.* at 920–21 (Hall, J., dissenting).

Monex argues that the *Jackson* majority took "pains to describe and limit its holding to [the] oppressive, job-related agree-

---

**2.** At the hearing, Monex suggested that under this Court's reading of *Jackson* the majority's rule would apply to an arbitration agreement between two large, sophisticated companies if one party were to challenge the agreement as unconscionable. While *Jackson* may apply in such a situation, the Court does not believe that a large, sophisticated company could frequently make a non-frivolous claim of unconscionability.

ment" at issue in the case. (Reply Br. 11.) Monex highlights the following statement from the opinion: "Under the circumstances presented here, we conclude that the district court was required to determine whether the arbitration agreement was unconscionable." *Jackson*, 581 F.3d at 914. Although this reference to "the circumstances presented here" could mean the specific factual setting, given the formulations of the holding and issue discussed above, the more plausible reading of this phrase is that the "circumstances" are those where an arbitration agreement is challenged as unconscionable.

Next, Monex argues that the *Jackson* majority's explanation for why it believed the case was "more straightfoward" than *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257 (9th Cir.2006) (en banc), shows it was limiting its holding. *See Jackson*, 581 F.3d at 916. Monex cites the majority's observation that, unlike in *Nagrampa*, "Jackson's merits dispute with the Employer does not arise out of a contract between them, but is rather based in federal statutory discrimination law" and that Jackson had signed a "free-standing Agreement to Arbitrate." *Id.* Monex concludes from this that because Richard Gilliam's dispute is contractual[3] and does not involve a fundamental job right, the *Jackson* holding does not apply. The Court disagrees. The Jackson majority's reference to the statutory basis of the claim and the free-standing arbitration agreement was merely an attempt to explain why the case was less difficult than those cases that involve challenges to "container contracts," such as

*Nagrampa* and *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 126 S.Ct. 1204, 163 L.Ed.2d 1038 (2006). It was not attempting to exclude cases involving challenges to "container contracts" from its holding. This evident by the fact that the majority based its decision largely on *Nagrampa*'s conclusion that "when a party specifically challenges the validity of arbitration provisions within a larger contract, apart from the validity of the contract as a whole, a court decides the threshold question of the enforceability of the arbitration provision." *Jackson*, 581 F.3d at 915 (citing *Nagrampa*, 469 F.3d at 1264). Furthermore, the majority stated that its decision was "pursuant to" both *Buckeye* and *Nagrampa*, further suggesting hat it was not limited only to the precise factual circumstances involved in *Jackson*.

Monex next suggests that *Jackson* does not apply because Richard Gilliam cannot "begin to allege the duress and lack of meaningful choice" that was alleged in *Jackson*. (Reply Br. 9.) This argument falters for two reasons. First, Monex mistakenly interprets the *Jackson* majority's descriptions of the unconscionability allegations as an implicit limitation on its holding. Such an interpretation is belied by the broad formulations of the holding that do not specify the precise "type" or "level" of unconscionability that must be alleged. Second, Monex's suggestion that Richard Gilliam cannot "begin to allege" procedural unconscionability is really an attack on the merits of his procedural unconscionability allegation. This attack on the merits of the unconscionability allegation does not

---

3. The Court notes that this is only a partially correct assertion. Richard Gilliam has brought both contractual and non-contractual counterclaims. Moreover, the existence of a challenge to the contract as a whole that is coupled with a separate and distinct challenge to the arbitration provision, as is the case here, would not preclude the Court from deciding whether the arbitration provision was unconscionable. *See Nagrampa*, 469 F.3d at 1275 n. 4 ("Indeed, it would be absurd to require that the complaint allege only claims attacking the arbitration agreement and not also include any other claims related to the contract.").

have any relevance to the question of whether *Jackson* requires this Court to determine whether the arbitration agreement is unconscionable.

Monex's final argument is based on the *Jackson* majority distinguishing its decision from those in other cases in which courts have held that the arbitrator is to decide the enforceability of an arbitration agreement. *See Jackson*, 581 F.3d at 917–18 (distinguishing *Terminix Int'l Co., LP v. Palmer Ranch Ltd. P'ship*, 432 F.3d 1327, 1333 (11th Cir.2005); *Contec Corp. v. Remote Solution Co.*, 398 F.3d 205, 208, 210–11 (2d Cir.2005); *Apollo Computer, Inc. v. Berg*, 886 F.2d 469, 472–74 (1st Cir.1989)). However, the basis upon which the *Jackson* majority distinguished these cases was that none of them involved an allegation of unconscionability. *Id.* at 918. Therefore, the majority's distinguishing of cases lacking an allegation of unconscionability cannot be interpreted as further limiting its holding, which already included a requirement that the arbitration agreement was alleged to be unconscionable. Moreover, just as in *Jackson*, Richard Gilliam is challenging the arbitration agreement as unconscionable.

For these reasons, *Jackson* requires the Court to apply California contract law principles in order to determine whether the arbitration agreement between Monex and Richard Gilliam is unconscionable.

### B. *Unconscionability Under California Law*

■■ In California, the doctrine of unconscionability "has both a procedural and a substantive element, the former focusing on oppression or surprise due to unequal bargaining power, the latter on overly harsh or one-sided results." *Little v. Auto Stiegler, Inc.*, 29 Cal.4th 1064, 1071, 130 Cal.Rptr.2d 892, 63 P.3d 979 (2003) (citing *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal.4th 83, 114, 99 Cal. Rptr.2d 745, 6 P.3d 669 (2000)). "Both the procedural and substantive elements must be met before a contract or term will be deemed unconscionable." *Parada v. Superior Court*, 176 Cal.App.4th 1554, 1570, 98 Cal.Rptr.3d 743 (2009). "Both, however, need not be present to the same degree. A sliding scale is applied so that 'the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa.'" *Id.* (quoting *Armendariz*, 24 Cal.4th at 114, 99 Cal.Rptr.2d 745, 6 P.3d 669).

■■ "The procedural element of an unconscionable contract generally takes the form of a contract of adhesion." *Little*, 29 Cal.4th at 1071, 130 Cal.Rptr.2d 892, 63 P.3d 979. However, the finding that a contract is one of adhesion is not dispositive, as a "procedural Linconscionability analysis also includes consideration of the factors of surprise and oppression." *Parada*, 176 Cal.App.4th at 1571, 98 Cal. Rptr.3d 743 (citing *Higgins v. Superior Court*, 140 Cal.App.4th 1238, 1252, 45 Cal. Rptr.3d 293 (2006)). The substantive element of linconscionability focuses on whether there are terms that "may generally be described as unfairly one-sided." *Little*, 29 Cal.4th at 1071, 130 Cal.Rptr.2d 892, 63 P.3d 979. "A provision is substantively unconscionable if it involves contract terms that are so one-sided as to 'shock the conscience,' or that impose harsh or oppressive terms." *Parada*, 176 Cal. App.4th at 1573, 98 Cal.Rptr.3d 743 (quoting *Morris v. Redwood Empire Bancorp*, 128 Cal.App.4th 1305, 1322, 27 Cal.Rptr.3d 797 (2005)).

At the outset, the Court notes that the recent *Parada* decision by the California Court of Appeal is not dispositive. Although *Parada* involved a similar Monex

arbitration agreement, the agreement at issue in this case is different in at least one critical respect: unlike the agreement in *Parada*, which required arbitration before three Judicial Arbitration & Mediation Service ("JAMS") arbitrators, *see id.* at 1581, 98 Cal.Rptr.3d 743, the agreement here requires only one JAMS arbitrator.[4] As the requirement of three arbitrators was the primary factor motivating the *Parada* court's finding that the agreement was unconscionable, *see id.* at 1584–85, 98 Cal.Rptr.3d 743, the Court finds the lack of this requirement here to be significant and, along with other factual differences, distinguishes *Parada* from this case. Nevertheless, *Parada* remains a useful example of how a California court would determine whether an arbitration agreement is unconscionable and the Court will rely upon its findings where appropriate. With this in mind, the Court will now consider whether the arbitration agreement is both procedurally and substantively unconscionable.

### 1. *Procedural Unconscionability*

■ Richard Gilliam argues that the Monex agreement is an adhesion contract. Monex appears to concede that the agreement is a "take-it-or-leave-it" adhesion contract. (*See* Reply Br. 11.) Regardless of Monex's position, the Court finds that the agreement is an adhesion contract. "A contract of adhesion is 'a standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it.'" *Parada*, 176 Cal.App.4th at 1570, 98 Cal.Rptr.3d 743 (quoting *Armendariz*, 24 Cal.4th at 113, 99 Cal.Rptr.2d 745, 6 P.3d 669). The Court is persuaded by the analysis of the similar Monex agreement found in *Parada*. "The Atlas Account Agreements are printed, standardized forms drafted by Monex." *Id.* Furthermore, "Monex was the party of superior bargaining strength" and gave Richard Gilliam "the option of signing the Atlas Account Agreements or rejecting them, in which case [he] could not open" a Monex investment account. *Id.* Additionally, the agreement here contains the same provision prohibiting alterations or modifications that the *Parada* court found to foreclose any argument that there was an opportunity to negotiate the terms of the agreement. However, the Court agrees with both Monex and the *Parada* court that a contract of adhesion is not necessarily unconscionable. Rather, the Court must consider whether there was surprise or oppression.

■ "Procedural surprise focuses on whether the challenged term is hidden in a prolix printed form or is otherwise beyond the reasonable expectation of the weaker party." *Id.* at 1571, 98 Cal.Rptr.3d 743 (quoting *Morris*, 128 Cal.App.4th at 1319, 27 Cal.Rptr.3d 797). The *Parada* court found that the Monex arbitration provisions were not hidden, but were in the same typeface and font as the rest of the agreement and had bold headings accurately describing the substance of each

4. Specifically, the agreement signed by Richard Gilliam states that "the number ... of arbitrators shall be in accordance with the JAMS Rules." (Carabini Decl., Ex. A, Purchase and Sale Agreement § 15.11.e.) The JAMS rules state that an arbitration "shall be conducted by one neutral Arbitrator unless all Parties agree otherwise." Rule 7, JAMS Comprehensive Arbitration Rules & Procedures, http://www.jamsadr.com/rules-comprehensive-arbitration/. Although the agreement also provides that "any party may require a panel of three neutral arbitrators" (Carabini Decl., Ex. A, Purchase and Sale Agreement § 15.11.e), the party requiring three arbitrators is bound to pay all arbitrator fees (*Id.* § 15.11.j).

paragraph. *Id.* The Court finds the *Parada* description to be accurate with respect to the agreement in this case and rejects Richard Gilliam's argument that the arbitration provisions are overly complicated.

Furthermore, the Court agrees with the *Parada* court that an arbitration requirement is not beyond the reasonable expectation of the weaker party. *Id.* The *Parada* court did find that the requirement of three arbitrators went beyond the reasonable expectation of the weaker party, but this finding is irrelevant here because the three arbitrator requirement is absent in the agreement Richard Gilliam signed. The *Parada* court also found that a provision prohibiting joinder and consolidation of claims, which is present in the agreement Richard Gilliam signed went beyond the reasonable expectation of the weaker party (Carabini Decl., Ex. A, Purchase and Sale Agreement § 15.11.I). *See Parada,* 176 Cal.App.4th at 1571, 98 Cal.Rptr.3d 743. Here, however, Richard Gilliam has not attempted to join or consolidate his claims with other parties and therefore the Court need not decide whether this provision went beyond the reasonable expectation of the weaker party. In sum, the Court finds that there was no procedural surprise, unlike the agreement in *Parada.*

■ "Oppression refers not only to an absence of power to negotiate the terms of a contract, but also to the absence of reasonable market alternatives." *Id.* at 1572,

98 Cal.Rptr.3d 743 (quoting *Morris,* 128 Cal.App.4th at 1320, 27 Cal.Rptr.3d 797). As the *Parada* court found, Monex investors had "many reasonable and realistic market alternatives to opening Monex Atlas accounts, including the option of not investing in precious metals at all." *Id.* Furthermore, "[t]his is not a situation such as admittance to a hospital or employment, in which an adhesion contract might be oppressive despite the availability of alternatives." *Id.* (citations omitted). Thus, the oppression factor is pot present here.

Due to the absence of both surprise and oppression, the Court finds that the Monex agreement is not procedurally unconscionable.[5]

### 2. *Substantive Unconscionability*

Richard Gilliam argues that six provisions of the arbitration agreement are substantively unconscionable.[6] The Court will analyze each in turn.

#### i. *Cost of Arbitration*

■ "[C]onsumers may challenge a predispute arbitration clause as unconscionable if the fees required to initiate the process are unaffordable, and the agreement fails to provide the consumer an effective opportunity to seek a fee waiver." *Id.* at 1578, 98 Cal.Rptr.3d 743 (quoting *Gutierrez v. Autowest, Inc.,* 114 Cal. App.4th 77, 83, 7 Cal.Rptr.3d 267 (2003)).[7]

---

**5.** The Court notes that this finding alone is enough to find that the arbitration agreement is not unconscionable. *Parada,* 176 Cal. App.4th at 1570, 98 Cal.Rptr.3d 743. However, for the sake of completeness, the Court considers substantive unconscionability as well.

**6.** In addition to challenging specific provisions, Richard Gilliam also argues that the agreement restricts his right under the California Arbitration Act to require disclosures of past Monex arbitration proceedings. This ar-

gument is misplaced because it is unrelated to unconscionability and the Federal Arbitration Act, not the California Arbitration Act, governs the agreement.

**7.** Although *Gutierrez* dealt with consumers, and here the parties dispute whether Richard Gilliam was a consumer, the Court follows the *Parada* court's conclusion that a party to a Monex investment contract can challenge arbitration fees as being unconscionable. *See Parada,* 176 Cal.App.4th at 1580, 98 Cal. Rptr.3d 743 ("Although *Gutierrez* concerned a

Although the agreement Richard Gilliam signed only requires one JAMS arbitrator, he nonetheless relies primarily on the *Parada* court's finding that the cost of three JAMS arbitrators made a different Monex arbitration agreement unconscionable. The Court does not believe the cost of one JAMS arbitrator is unconscionable and is not convinced that *Parada* requires a finding of unconscionability here.

The parties dispute the actual total cost of a JAMS arbitration. Both parties agree that the JAMS case-management fee is $1,600 per party.[8] Likewise, they agree that the cost of an eight-hour JAMS arbitration would cost, at minimum, another $1,600 per party.[9] However, they disagree as to how long such an arbitration will take and, thus, what the total cost of the proceeding will be ($8,000 versus $3,200). Richard Gilliam argues that the case will take four days to resolve, while Monex argues that it will take only one day. Richard Gilliam appears to base his estimate of the arbitration length on the one used in *Parada*. The *Parada* court estimated the length of arbitration to be four days on the basis of an attorney declaration submitted by Monex that stated the arbitration would take no longer than four days. *Id.* at 1580 n. 4, 98 Cal.Rptr.3d 743. Monex has not explained how it reached its conclusion that the arbitration here would last only one day.

The Court finds that neither fee estimate renders the arbitration provision unconscionable in this case. In determining whether the arbitration cost is unconscionably high, the Court is required to consider the ability of Richard Gilliam to pay the arbitration costs at the time the agreement was entered into. *See id.* at 1583, 98 Cal.Rptr.3d 743 ("Determining ability to pay at the time a party seeks to enforce a contract is contrary to statute and would make enforceability subject to change based on factors potentially outside the knowledge and control of the party seeking to enforce arbitration.").[10] In *Parada*, the plaintiffs submitted declarations stating hat they had limited income and savings, coupled with large amounts of debt. *See id.* at 1583–84, 98 Cal.Rptr.3d 743. Richard Gilliam has submitted a declaration that at the time he signed the agreement he had no income, but a savings of $100,000. (Richard Gilliam Decl. ¶ 16.) The declaration does not mention whether Richard Gilliam had any debt or expenses, but it does state that the $100,000 was

---

consumer contract, its reasoning extends to an investor contract that includes 'prohibitively high' arbitration fees that are not within an investor's reasonable expectations.").

8. Monex suggests that Richard Gilliam would be entitled to a fee waiver, but provides no evidence that he would be entitled to such a waiver. Moreover, the contract does not specifically provide for an up-front fee waiver.

9. The *Parada* court calculated this per day fee, which both parties have adopted, in August 2009. *See Parada*, 176 Cal.App.4th at 1580, 98 Cal.Rptr.3d 743. The Court believes that it is an accurate approximation, although it notes that the fee may be different depending on the specific JAMS arbitrator selected.

10. As Monex points out, *Parada* is inconsistent on this point, as elsewhere in the opinion the *Parada* court compares the cost of arbitration to the losses claimed by the plaintiffs. *See Parada*, 176 Cal.App.4th at 1581, 98 Cal. Rptr.3d 743 ("To arbitrate a claim, each party thus would have to pay at east $20,800, and would have to deposit that amount before the arbitration hearing. Such arbitration costs are prohibitive for losses ranging from $44,000 to $130,000."). This appears to be in error, since the amount of damages in a potential suit would clearly be "subject to change based on factors potentially outside the knowledge and control of the party seeking to enforce arbitration." *Id.* at 1583, 98 Cal.Rptr.3d 743.

"nearly all" of his "liquid net worth." [11] (*Id.* ¶ 20.) The Court believes that Richard Gilliam's $100,000 in savings indicates that at the time the arbitration agreement was signed he had sufficient ability to pay arbitration fees ranging from $3,200 to $8,000. Unlike the *Parada* plaintiffs, Richard Gilliam had a positive rather than negative net worth when he entered the agreement. Additionally, the arbitration fees here are significantly lower due to the absence of the three arbitrator requirement. In sum, he Court finds that, with respect to Richard Gilliam, the arbitration fees are not prohibitive.

### ii. *Right of Appeal*

Richard Gilliam argues that the agreement's appeal provisions are Linconscionable. As the contract specifies that three JAMS judges are necessary for an appeal (Carabini Decl., Ex. A, Purchase and Sale Agreement § 15.11.g), Richard Gilliam invokes *Parada*. The Court finds the analogy to *Parada* unpersuasive. First, the *Parada* court did not discuss appeals at all and therefore did not consider whether a three arbitrator appellate panel would be reasonable. Unlike initial arbitration, the requirement for three arbitrators on appeal does not strike the Court as inherently unjustified. Indeed, the three arbitrator requirement for appeals mirrors the appellate procedure in both state and federal courts. Second, the *Parada* plaintiffs would be forced to share the cost of three arbitrators from the moment they sought to pursue their claims, whereas here Richard Gilliam may never be required to contribute towards the cost of

a three arbitrator panel. This is because he appealing party is responsible for the costs of appeal and the winning party can refuse to participate in the appeal, thus avoiding the imposition of costs. [12] Richard Gilliam focuses on the negative aspect of this provision, in that he would have to potentially bear the entire cost of an appeal, while ignoring the fact that it also acts to limit mandatory arbitration costs to those of the initial arbitration.

Richard Gilliam, citing *Little v. Auto Stiegler, Inc.*, 29 Cal.4th 1064, 130 Cal. Rptr.2d 892, 63 P.3d 979 (2003), next argues that the provision restricts his access to appeal to a degree that it is unconscionably one-sided. The Court disagrees. Unlike the agreement in *Little*, which contained an explicit prohibition on appeals of judgments under $50,000, he agreement here does not contain any such restriction. The California Supreme Court explained that the $50,000 limitation was one-sided because it completely prevented appeals of potentially substantial claims brought by plaintiffs:

> From a plaintiff's perspective, the decision to resort to arbitral appeal would be made not according to the amount of the arbitration award but the potential value of the arbitration claim compared to the costs of the appeal. If the plaintiff and his or her attorney estimate that the potential value of the claim is substantial, and the arbitrator rules that the plaintiff takes nothing because of its erroneous understanding of a point of law, then it is rational for the plaintiff to appeal. Thus, the $50,000 threshold inordinately benefits defendants.

---

**11.** It is unclear if Richard Gilliam had any non-liquid assets at the time the agreement was signed. The declaration does state that Richard Gilliam owned a home and attempted to get a home equity loan in order to invest in Monex, but the bank rejected the application.

**12.** The agreement provides that the JAMS appellate panel must proceed as if all parties were participating, even if a party chooses not to participate. (Carabini Decl., Ex. A, Purchase and Sale Agreement § 15.11.g.5.)

*Id.* at 1073, 130 Cal.Rptr.2d 892, 63 P.3d 979. Here, Richard Gilliam is free to do what the plaintiff in *Little* was not: weigh the costs of an appeal versus the potential value of his claim. Just because he might decline to bring an appeal after weighing the costs and benefits does not make the provision one-sided.

### iii. Limitation on Damages

 The arbitration agreement restricts damages to actual contract and tort damages and prohibits awards of attorneys' fees. (Carabini Decl., Ex. A, Purchase and Sale Agreement § 15.11.k.) Richard Gilliam argues that in *Armendariz v. Foundation Health Psychcare Services, Inc.*, 24 Cal.4th 83, 99 Cal.Rptr.2d 745, 6 P.3d 669 (2000), the California Supreme Court established that any arbitration provision that invokes a "damages limitation is contrary to public policy and unlawful." *Id.* at 104, 99 Cal.Rptr.2d 745, 6 P.3d 669. This is an overly broad and incorrect reading of the case. The Court agrees with Monex that central to the *Armendariz* decision was the fact that the plaintiff was seeking statutorily mandated punitive damages and attorney fees.[13] In contrast, Richard Gilliam's counterclaims are primarily common law contract and tort actions. The major exception to this is his claim under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), but as this Court explained in a previous ruling, the validity of the remedial limitation as applied to the RICO claim is an issue for the arbitrator. *See Monex Deposit Co. v. Gilliam*, 616 F.Supp.2d 1023, 1026 (C.D.Cal.2009) (citing *PacifiCare Health Sys., Inc. v. Book*, 538 U.S. 401, 123 S.Ct. 1531, 155 L.Ed.2d 578 (2003)).[14] In sum, the Court does not believe that a limitation on damages to actual contract and tort damages, in this context, shocks the conscience or is unfairly one-sided.

### iv. Class Action Prohibition

Richard Gilliam argues that the arbitration agreement's class action prohibition is unconscionable under California state law. However, as he has not brought his counterclaims against Monex on behalf of a class, the Court need not consider this argument.

### v. Monex Can Recover Attorneys' Fees and Costs

Richard Gilliam asserts that Monex would be able to recover attorneys' fees and costs under the agreement. He is incorrect: the relevant contract does not provide for either an award of attorneys' fees or costs if Monex prevails.[15]

---

**13.** In *Armendariz,* the employee plaintiff sought relief under the Fair Employment and Housing Act. *Armendariz,* 24 Cal.4th at 90, 99 Cal.Rptr.2d 745, 6 P.3d 669.

**14.** The Court does not read *Jackson* to require the Court to assess the validity of a damages limitation as applied to a RICO claim where a contract assigns this determination to an arbitrator. Such a requirement would be contrary to the Supreme Court's decision in *PacifiCare. See PacifiCare,* 538 U.S. at 407, 123 S.Ct. 1531 (holding, in the context of an arbitration agreement covering a RICO claim, that the proper course was to compel arbitration where the court was uncertain how an arbitrator would construe the remedial limita-

tions). Moreover, the Court does not find that a provision delegating to an arbitrator the determination of the validity of a damages limitation is itself unconscionable. There is no reason to believe that an arbitrator would not invalidate the damages limitation if necessary to award treble damages under RICO.

**15.** Richard Gilliam points to a provision entitled "Attorneys' Fees" in the "Loan, Security and Storage Agreement" that does appear to make Richard Gilliam liable for attorneys' fees "incurred or paid by [Monex] in exercising any right, power or remedy conferred" by the agreement. (Carabini Decl., Ex. A, Loan, Security and Storage Agreement § 11.) This provision is inapplicable here for two reasons.

### vi. *Lack of Mutuality*

█ Finally, Richard Gilliam argues that a provision allowing either party to obtain "provisional, injunctive, or other equitable relief" is unconscionable because Monex is more likely to use the provision. He cites a California employment law case in which a provision requiring arbitration of all claims that an employee might bring, while exempting claims an employer is likely to bring, was found to be unconscionable. *See Martinez v. Master Protection Corp.*, 118 Cal.App.4th 107, 12 Cal. Rptr.3d 663 (2004). However, the Court is not convinced that in the context of an investment agreement one party is inherently more likely to seek injunctive relief than the other. Rather, the Court believes that the vast majority of disputes under this contract would be related to unpaid account balances or investment losses, and thus subject to arbitration. In any event, the availability of equitable and related relief is permissive, not restrictive, and simply preserves remedies a party would have in court.

### III. *Conclusion*

As the arbitration agreement is neither procedurally or substantively unconscionable, the Court GRANTS the motion, staying all of Richard Gilliam's counterclaims and compelling arbitration of the counterclaims.

IT IS SO ORDERED.

---

First, the provision is found only in the "Loan, Security and Storage Agreement," the subject of which is cash advances and loans to Monex customers. Richard Gilliam's counterclaims, however, do not involve Monex's lending practices. Thus, the "Purchase and Sale Agreement," not the "Loan, Security and Storage Agreement," is the relevant contract. Second, Monex will be unable to exercise any right, power or remedy contained in the "Loan, Security and Storage Agreement" as part of its defense against Richard Gilliam's counterclaims, all of which are unrelated to this agreement.