Filed 5/13/13  Nibler v. Monex Deposit Co. CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| DANIEL J. NIBLER, | |
| Plaintiff and Respondent, | G046511 |
| v. | (Super. Ct. No. 30-2011-00500383) |
| MONEX DEPOSIT COMPANY et al., | O P I N I O N |
| Defendants and Appellants. | |

Appeal from an order of the Superior Court of Orange County, Gregory H. Lewis, Judge.  Reversed and remanded.

Pistone & Wolder, Thomas A. Pistone, Aaron C. Watts; Farella Braun + Martel and Neil A. Goteiner for Defendants and Appellants.

Law Offices of Marc I. Zussman and Marc I. Zussman for Plaintiff and Respondent.

\*          \*          \*

Appellants Monex Credit Company and Monex Deposit Company (Monex) appeal from an order denying a motion to compel arbitration of a dispute with one of its customers, respondent Daniel J. Nibler. Nibler sued Monex, a precious metals trading company in which he had invested an inheritance, for nine causes of action relating to losses suffered through margin trading with Monex. Monex, relying on account documents Nibler signed at the time he invested his money, moved to compel arbitration.

The trial court denied Monex's motion, finding the arbitration provisions unconscionable. Nibler argues the arbitration provisions here are nearly identical to those at issue in another case involving Monex, *Parada v. Superior Court* (2009) 176 Cal.App.4th 1554 (*Parada*). We find, however, that several important changes have been made to the arbitration provisions, including the ability to opt out completely, that preclude a finding of unconscionability. We therefore reverse.

## I

## FACTS

In June 2008, looking for an investment opportunity for the approximately $270,000 remaining from an inheritance he received several years earlier, Nibler contacted Monex.[1] According to Nibler, he spoke with Antonio Moss, a Monex representative, and explained that he was unemployed and had been for some time. Nibler told Moss he wanted a steady, low-risk investment strategy, and he needed a financial advisor because he had no previous investment experience. Moss encouraged Nibler to open an Atlas Account, under which he could trade precious metals on margin and store the metals at Monex. Instead, Nibler initially purchased $150,000 of gold and silver which he had delivered to him, as he felt this was the safer option.

---

[1] As of October 2011, Nibler was 34 years old. Accordingly, he would have been 30 or 31 when he first contacted Monex.

Thereafter, Moss "aggressively pursued" Nibler and encouraged him to open an Atlas Account. Nibler later stated that Moss repeatedly told him that large profits would be "virtually guaranteed," and risk was never discussed. Nibler eventually agreed and opened the Atlas Account.

At the time Nibler opened the Atlas Account, he signed two agreements (collectively the Agreements) with Monex. The first is a purchase and sale agreement, the second a loan and security agreement, each of which included an arbitration provision. With the exception of references to other numbered paragraphs in the respective Agreements, the arbitration provisions are identical.

Both provisions state: "The parties agree that any and all disputes, claims, or controversies arising out of or relating to any transaction between them or to the breach, termination, enforcement, interpretation or validity of this Agreement, including the determination of the scope or applicability of this agreement to arbitrate, shall be subject to the terms of the Federal Arbitration Act and shall be submitted to final and binding arbitration before JAMS [Judicial Arbitration and Mediation Services], or its successor, in Orange County, California, in accordance with the laws of the State of California for agreements made in and to be performed in California."

The arbitration provisions called for the selection of an arbitrator under JAMS rules, except that the arbitrator must be a retired California judge (either state or federal), and either party could require a panel of three arbitrators. The costs of arbitration were to be split evenly, unless one party requested a three-arbitrator panel, in which case that party was required to pay all arbitrator fees. The provisions allowed for an appeal of a single arbitrator's decision through an appellate process conducted by JAMS (three-arbitrator decisions were final). All appellate costs were to be borne by the party initiating the appeal. The damages and remedies available under the arbitration provisions were "limited to any actual contract damages and tort damages incurred by the

3

party and proximately caused by and resulting from the other party's alleged breach." Each party was responsible for its own attorney fees.

With respect to arbitration rules and procedures, the arbitration provisions stated any proceeding would be conducted under JAMS Comprehensive Arbitration Rules and Procedures in effect at the time a petition to arbitrate was filed. The JAMS Web site address was provided, along with a phone number customers could call to obtain copies of the rules and information concerning administrative and arbitration fees.

The arbitration provisions also included the following opt-out provision: "Voluntary Agreement; Revocation. Each party's agreement to arbitrate is voluntary. Customer may revoke Customer's agreement to arbitrate to arbitrate under Section 15.11 [Section 31] by written notice delivered to [Monex] . . . within 30 days of Customer's first transaction with [Monex]."

Just before the signature blocks, the Agreements included a number of statements in bold text. Among them was the following: "I have carefully read and understand the foregoing, I understand that I am agreeing to submit all disputes, claims and controversies arising out of, relating to, my transactions with [Monex] or this Agreement to binding arbitration before JAMS, which is a private dispute resolution procedure, as set forth in Section 15.11 [31] above. I understand that by agreeing thereto, I am also agreeing to pay JAMS administrative fees and arbitrators fees according to the terms of Subsection 15.11 [31], and to give up my rights to a jury trial of any claims. (See Section 15.11 [31].)" (Boldface omitted.)

Nibler signed the agreements on June 11, 2008. There is no indication in the record that he exercised the opt-out provision. From June to October 2008, Nibler engaged in margin trading with Monex, eventually trading in the gold and silver he had already purchased. Although he made some trades with initial profits, by October, he had no funds left in his account.

In August 2011, Nibler filed the instant complaint alleging nine causes of action against Monex, including fraud, negligence, deceit, constructive fraud, breach of fiduciary duty, negligent misrepresentation, breach of contract, commodities fraud and unfair business practices. Monex filed a motion to compel arbitration, attaching the Agreements as evidence of consent to arbitrate. Nibler opposed, arguing the arbitration provisions were unconscionable. The opposition included Nibler's declaration, which emphasized his lack of experience and sophistication, and his current poor financial situation. He stated that if required to arbitrate, he could not afford to pursue his claims. In its reply, Monex emphasized the presence of the opt-out provision.

On December 12, 2011, after oral argument, the trial court denied Monex's motion, finding the arbitration provision "procedurally and substantively unconscionable." Monex now appeals.

II

DISCUSSION

*Relevant Law and Standard of Review*

California has a strong public policy in favor of arbitration as an expeditious and cost-effective way of resolving disputes. (*Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 9.) Code of Civil Procedure section 1281.2[2] requires a court to order arbitration "if it determines that an agreement to arbitrate . . . exists . . . ." (§ 1281.2.) On appeal, "[w]e review de novo a trial court's determination of the validity of an agreement to arbitrate when the evidence presented to the trial court was undisputed. [Citations.] We review under the substantial evidence standard the trial court's resolution of disputed facts. [Citation.] 'Whether an arbitration provision is unconscionable is ultimately a question of law. [Citations.]' [Citation.]" (*Parada , supra*, 176 Cal.App.4th at p. 1567.) Thus, while the parties make much of what the trial court did or did not find, it is

---

[2] Subsequent statutory references are to the Code of Civil Procedure.

ultimately of little import here because the key facts are undisputed.[3]

*Existence of Arbitration Agreement*

Parties can only be compelled to arbitrate when they have agreed to do so. (*Westra v. Marcus & Millichap Real Estate Investment Brokerage Co.*, *Inc.* (2005) 129 Cal.App.4th 759, 763.) In *Rosenthal v. Great Western Fin. Securities Corp.* (1996) 14 Cal.4th 394, the California Supreme Court stated, "[W]hen a petition to compel arbitration is filed and accompanied by prima facie evidence of a written agreement to arbitrate the controversy, the court itself must determine whether the agreement exists . . . . Because the existence of the agreement is a statutory prerequisite to granting the petition, the petitioner bears the burden of proving its existence by a preponderance of the evidence." (*Id.* at p. 413.)

Monex provided such prima facie evidence in the form of the arbitration provisions in the Agreements. Those provisions state in relevant part that: "The parties agree that any and all disputes, claims, or controversies arising out of or relating to any transaction between them or to the breach, termination, enforcement, interpretation or validity of this Agreement . . . shall be submitted to final and binding arbitration . . . in accordance with the laws of the State of California for agreements made in and to be performed in California." Given the existence of a valid contract containing a clear and conspicuous arbitration provision, we find that Monex has met its burden under *Rosenthal* to establish prima facie evidence of an agreement to arbitrate. (*Rosenthal v. Great Western Fin. Securities Corp.*, *supra*, 14 Cal.4th at p. 413.)

---

[3] On a related note, we wholeheartedly reject Monex's contention that Nibler cannot argue the trial court should have found the Agreements were adhesive because he did not file a cross-appeal. A respondent may raise an argument without a cross-appeal to show the trial court reached the right result even if on the wrong theory. (*Mayer v. C.W. Driver* (2002) 98 Cal.App.4th 48, 57.)

*Unconscionability*

If the arbitration clause is to be found invalid, Nibler must establish a defense to its enforcement. The grounds upon which the trial court based its decision, and which Nibler relies here, is unconscionability. As the party opposing arbitration, Nibler has the burden of establishing the arbitration provision is unconscionable. (*Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC* (2012) 55 Cal.4th 223, 246 (*Pinnacle*).)

Civil Code section 1670.5, subdivision (a), codifies unconscionability as a reason for refusing a contract's enforcement. It states: "If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result."

Unconscionability "has '"both a 'procedural' and a 'substantive' element," the former focusing on '"oppression"' or '"surprise"' due to unequal bargaining power, the latter on '"overly harsh"' or '"one-sided"' results.' [Citation.]" (*Little v. Auto Stiegler, Inc.* (2003) 29 Cal.4th 1064, 1071.) Both the procedural and substantive elements must be met before a contract or term will be deemed unconscionable. (*Parada*, *supra*, 176 Cal.App.4th at p. 1570.) Substantive and procedural unconscionability need not be present to the same degree. Rather, the two elements work together in a sliding scale relationship so that "'the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa.' [Citation.]" (*Ibid.*)

Procedural unconscionability focuses on the manner in which the contract was negotiated and the circumstances of the parties at the time. (*Parada*, *supra*, 176 Cal.App.4th at p. 1570.) It "requires oppression or surprise." (*Pinnacle*, *supra*, 55

7

Cal.4th at p. 247.) "The procedural element of an unconscionable contract generally takes the form of a contract of adhesion, '"which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it."' [Citation.]" (*Little v. Auto Stiegler, Inc.*, *supra*, 29 Cal.4th at p. 1071.)

We begin by determining whether the Agreements were contracts of adhesion. An adhesive contract is "'a standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it.' [Citation.]" (*Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal. 4th 83, 113.)

In *Parada,* which also involved Monex account agreements, this court noted "[t]he Atlas Account Agreements are printed, standardized forms drafted by Monex." (*Parada, supra,* 176 Cal.App.4th at p. 1570.) That has not changed. We also observed that "the front page of the Atlas Account Agreements contains a proviso stating: 'Any deletions from, additions to or cutting or mutilation of any portion of this Agreement will render the Agreement unacceptable.'" (*Ibid.*) That also remains the case here. While the plaintiffs in *Parada* began their relationship with Monex with less cash than Nibler (see *id.* at p. 1562), Nibler's initial relative wealth does not preclude a finding that Monex was still the party with superior bargaining strength, and unless he consented to the Agreements, he could not open a margin account. (*Id.* at p. 1571.) We therefore conclude the Agreements were contracts of adhesion.

As we noted in *Parada*, however, a finding of adhesion does not conclude our procedural unconscionability inquiry. We must also consider the question of surprise and oppression. (*Parada*, *supra*, 176 Cal.App.4th at p. 1571.) "'Procedural surprise focuses on whether the challenged term is hidden in a prolix printed form or is otherwise beyond the reasonable expectation of the weaker party.' [Citation.] The arbitration

8

provisions in the Atlas Account Agreements are not hidden, but consist of 11 paragraphs, each with a heading in bold typeface accurately describing the substance of the paragraph.  The arbitration provisions are in the same typeface and font size as the rest of the provisions.  Arbitration itself is a fairly common means of dispute resolution and would not be beyond the reasonable expectation of the weaker party." (*Ibid.*)  All of the above remains true here.

In addition, each agreement also included, in the area immediately before the signature block, another sentence referencing the arbitration provision and thereby calling attention to it.  Further, here, as in *Parada*, there was no evidence that Nibler was not given ample time to read and understand the Agreements before signing them.  He had the time, and the resources, if he so wished, to conduct research, seek the advice of an independent professional, consider alternatives, and ask questions about the Agreements.

Moreover, and critical to our analysis, there are a number of key differences between the Agreements here and those at issue in *Parada*.  The first is that the "weaker party would not reasonably expect any dispute arising under the Atlas Account Agreements to be arbitrated before a panel of *three* private arbitrators, the fees for whom are not expressly set forth in the agreements." (*Parada*, *supra*, 176 Cal.App.4th at p. 1571.)  That provision does not exist in the Agreements Nibler signed; only one arbitrator is required, and although either party may elect to proceed with a three-arbitrator panel, if it does, that party is responsible for all arbitrator fees.  We cannot conclude that the cost of a single retired judge arbitrator would constitute the same "nasty shock" as the costs of a three-arbitrator panel present in *Parada*. (*Id.* at p. 1572.)  Nibler fails to establish that

the cost of the arbitrator here is so far out of line with the reasonable expectations of an explicit cost-sharing arbitration provision as to constitute surprise.[4]

There is another important difference between the arbitration provisions here and those present in *Parada* — the 30-day opt-out provision. As noted above, the Agreements had a provision stating: "Voluntary Agreement; Revocation. Each party's agreement to arbitrate is voluntary. Customer may revoke Customer's agreement to arbitrate to arbitrate under Section 15.11 [Section 31] by written notice delivered to [Monex] . . . within 30 days of Customer's first transaction with [Monex]."

In arguing that the opt-out provisions do not preclude a finding of procedural unconscionability, Nibler argues they are a "cynical ploy" to circumvent *Parada,* because 30 days is normally an insufficient amount of time for a customer to "realize his losses and Monex's wrongful practices." It is not, however, an insufficient amount of time for a customer to look into JAMS procedures and costs, or to simply decide for any reason, or none at all, that he or she does not wish to arbitrate. It is a get-out-of-arbitration-free card. It is the very opposite of the kind of oppression[5] we would need to find in order to conclude the Agreements were procedurally unconscionable.[6]

---

[4] That does not mean, however, that Monex cannot provide *more* information disclosing the potential costs of arbitration to its customers. Doing so would certainly be the preferred practice.

[5] As we discussed in *Parada,* Nibler had reasonable market alternatives. (*Parada*, *supra*, 176 Cal.App.4th at p. 1572.) While not dispositive, it is one factor used in considering oppression, and it weighs on Monex's side. (*Ibid.*)

[6] Nibler also argues the limitations on damages provision renders the Agreements procedurally unconscionable, but this is typically a matter for a substantive unconscionability analysis. (*Lhotka v. Geographic Expeditions, Inc.* (2010) 181 Cal.App.4th 816, 825-826.) Further, as we read the relevant clause, "actual" damages are restricted only to the contract claims, thereby permitting punitive damages on the tort claims. Monex conceded as much in its reply brief and at oral argument, and they cannot attempt to argue otherwise during a subsequent arbitration proceeding in this matter.

At oral argument, Nibler's counsel asserted the opt-out provision is illusory because opting out precludes the customer from any further margin trading. In effect, he argued, opting out of arbitration results in Monex closing the Atlas account. Monex's counsel denied this, and we cannot find any evidence supporting this argument in the record. While the front page of the Agreements states: "Any deletions from, additions to or cutting or mutilation of any portion of this Agreement will render the Agreement unacceptable," it is inapplicable to Nibler's argument. Exercising a clause in the Agreements is not tantamount to crossing or cutting out portions of it, which is the only reasonable interpretation of that provision. (See *Southern Cal. Edison Co. v. Superior Court* (1995) 37 Cal.App.4th, 839, 847-848 [contractual language must be "reasonably susceptible" to urged interpretation].)

Thus, contrary to Nibler's argument, the arbitration provisions at issue here are not "nearly identical to the agreement the *Parada* court has already found to be procedurally unconscionable." These differences — the single arbitrator provision and the option to opt out within 30 days — are critical ones. To sum up, on the one hand, the Agreements are contracts of adhesion, and Nibler was in the weaker bargaining position. On the other, the arbitration provisions were not hidden. Indeed, they were repeated immediately before the signature block; there were no elements that would have constituted surprise or oppression; and Nibler had the ability to opt out of arbitration completely within 30 days without voiding the remainder of the contracts.

We cannot, on this record, conclude the Agreements were procedurally unconscionable. Thus, we need not consider the issue of substantive unconscionability. (See *Monex Deposit Co. v. Gilliam* (C.D. Cal. 2009) 671 F.Supp.2d 1137, 1144, fn. 5 [holding that the finding of no procedural unconscionability "alone was enough to find that the contract is not unconscionable."].)

11

## III

## DISPOSITION

The order is reversed, and the case remanded to the trial court for further proceedings.  In the interests of justice, each party is to bear its own costs on appeal.


MOORE, ACTING P. J.

I CONCUR:


FYBEL, J.

12

ARONSON, J., dissenting:

I respectfully dissent from the majority's decision. The majority correctly notes both procedural and substantive unconscionability are required to invalidate an arbitration clause, but need not be present to the same degree. (*Parada v. Superior Court* (2009) 176 Cal.App.4th 1554, 1570 (*Parada*).) Courts must use a "'sliding scale'" approach, which balances the two elements. (*Ibid*.) The more evidence a contract's terms are substantively unconscionable, the less evidence of procedural unconscionability is required, and vice versa. (*Ibid*.) The majority, however, misapplies the test to find no procedural unconscionability, and therefore does not address the substantively unconscionable elements in Monex's Atlas Account Agreement.

In my view, Monex injected a low to medium degree of procedural unconscionability in its arbitration provisions. The Atlas Agreement is an adhesive contract with built-in fees and costs beyond the reasonable expectations of the party with the weaker bargaining position. By merely referencing the arbitration rules and fees of Judicial Arbitration and Mediation Services (JAMS), the Atlas Agreement conceals the full extent of those fees and costs. The high arbitral forum fees, including an arbitration appeal, and the provision limiting damages demonstrate a high degree of substantive unconscionability. This conclusion is reinforced when considering plaintiff Daniel Nibler's inability to pay these costs when he signed the agreement. In misapplying the governing principles for determining unconscionability, however, the majority's decision "effectively blocks every forum for [Nibler's] redress of disputes, including arbitration itself." (See *Gutierrez v. Autowest, Inc.* (2003) 114 Cal.App.4th 77, 89-90 (*Gutierrez*).) I disagree and would affirm the trial court's ruling.

*Procedural Unconscionability*

"'"Procedural unconscionability" concerns the manner in which the contract was negotiated and the circumstances of the parties at that time. [Citation.] It

1

focuses on factors of oppression and surprise.  [Citation.]"  (*Morris v. Redwood Empire Bancorp* (2005) 128 Cal.App.4th 1305, 1319 (*Morris*).)  As the majority acknowledges, an analysis of procedural unconscionability must begin with a determination whether the contract is a contract of adhesion.  (*Parada*, *supra*, 176 Cal.App.4th at p. 1570.)

"A contract of adhesion is '"a standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it."'"  [Citation.]"  (*Parada*, *supra*, 176 Cal.App.4th at p. 1570.)  In *Parada*, we found the Atlas Agreement was a contract of adhesion and the majority again reaches that conclusion here because Monex held the superior bargaining position and the Atlas Agreement is a standardized, printed form offered to Nibler and other customers on a take-it-or-leave-it basis.  The majority's concession that the Atlas Agreement is a contract of adhesion, with which I agree, establishes at least a minimal degree of procedural unconscionability.  (*Vasquez v. Greene Motors, Inc.* (2013) 214 Cal.App.4th 1172, 1184 & fn. 5 (*Vasquez*); *Gatton v. T-Mobile USA, Inc.* (2007) 152 Cal.App.4th 571, 585 (*Gatton*).)

The conclusion the Atlas Agreement is a contract of adhesion, however, is merely the beginning of the inquiry into the Agreement's procedural unconscionability.  (*Morris*, *supra*, 128 Cal.App.4th at p. 1319; *Parada*, *supra*, 176 Cal.App.4th at p. 1571.)  Indeed, a contract's adhesive nature is just one factor to be considered in determining the overall degree of procedural unconscionability that exists.  (*Parada*, at pp. 1569-1570.)  One also must consider whether any element of oppression or surprise regarding any particular provision in the Atlas Agreement adds to the degree of procedural unconscionability.

"Procedural surprise focuses on whether the challenged term is hidden in a prolix printed form or is otherwise beyond the reasonable expectation of the weaker party."  (*Morris*, *supra*, 128 Cal.App.4th at p. 1321.)  Surprise exists when a contractual

2

provision would defeat the "'strong' expectation of the weaker party" and the party with the superior bargaining position fails to call the provision to the weaker party's attention. (*Parada*, *supra*, 176 Cal.App.4th at p. 1571.) Oppression, on the other hand, refers to the weaker party's inability to negotiate contract terms and the absence of reasonable alternatives. (*Morris*, at p. 1320.)

Here, section 15.11, subdivision (j)(1), of the Atlas Agreement provides that each side "will share equally in the basic arbitration costs, including administrative fees and the fees of the arbitrator." The agreement also provides for an appeal to a panel of three appellate arbitrators, and subdivision (j)(2) mandates that the party appealing an arbitrator's award "shall be responsible for all costs of the appeal, including the fees of the appellate arbitrators." Under section 15.11, subdivision (d), the JAMS's rules and procedures in existence at the time of the arbitration demand will govern the arbitration. These and the other arbitration provisions encompass 4 of the 30 pages of contract terms and conditions in the Atlas Agreement. None of the foregoing provisions were highlighted or otherwise called to Nibler's attention and no details about the fees or costs of an initial arbitration or appeal were provided. The arbitration provisions list JAMS's Web site and telephone number, presumably so the consumer could learn the current rules and fee schedules for arbitration, but the provisions fail to emphasize the current rules and fee schedules will not necessarily govern any arbitration between the parties.

These provisions add to the degree of procedural unconscionability because they effectively required Nibler to uncover the necessary information about arbitration and administrative fees. In *Harper v. Ultimo* (2003) 113 Cal.App.4th 1402, 1405, we found the element of surprise where an arbitration agreement referenced the Better Business Bureau arbitration rules but did not attach them to the contract. (See also *Zullo v. Superior Court* (2011) 197 Cal.App.4th 477, 486 ["it [is] oppressive to require the [weaker] party to make an independent inquiry to find the applicable rules in order to

3

fully understand what she was about to sign"]; *Trivedi v. Curexo Technology Corp.* (2010) 189 Cal.App.4th 387, 393 [noting a "failure to provide a copy of the arbitration rules . . . supported a finding of procedural unconscionability]; *Fitz v. NCR Corp.* (2004) 118 Cal.App.4th 702. 721.)

The foregoing provisions add further procedural unconscionability because they impose on the appealing party all the costs of an appeal, including the fees of the three appellate arbitrators. In *Parada*, we found an arbitration agreement procedurally unconscionably because it required a three-arbitrator panel to hear the arbitration, but failed to disclose the substantial fees and costs imposed on the weaker party. We explained "the weaker party would not reasonably expect any dispute arising under the Atlas Account Agreements to be arbitrated before a panel of *three* private arbitrators, the fees for whom are not expressly set forth in the agreements." (*Parada*, *supra*, 176 Cal.App.4th at pp. 1571-1572, original italics.) This reasoning applies here with even greater force.

In *Parada*, the arbitration agreement required the parties to share the fees and costs of the three-arbitrator panel. Here, the Atlas Agreement requires the appealing party to bear all of the fees and costs associated with the three-arbitrator appellate panel and there is no evidence to show Monex called Nibler's attention to this provision. It is beyond a consumer's reasonable expectations that he or she would have to pay all the fees and costs to appeal. In sum, an adhesion contract that places the burden on the weaker party to learn, and in this case anticipate, future arbitration costs and fees injects a low to moderate degree of procedural unconscionability.

The majority does not explain why, under *Vasquez* and *Gatton*, its concession the Atlas Agreement is a contract of adhesion does not also establish at least a minimal degree of unconscionability. Similarly, the majority does not discuss the cases cited above that find a degree of procedural unconscionability when the weaker party

4

bore the burden of (1) discovering arbitration rules incorporated by reference, and (2) paying significant fees and costs beyond that party's reasonable expectations. Instead, the majority finds the 30-day opt out clause crucial in distinguishing this case from the holding in *Parada*, presumably because it provided Nibler a further opportunity to investigate the current costs and fees for JAMS arbitrators and anticipate potential increases in those costs and fees. In *Parada*, however, we concluded Monex's arbitration provisions were unconscionable despite finding the weaker party received "ample time to read and study the Atlas Account Agreements before signing them" (*Parada*, *supra*, 176 Cal.App.4th at p. 1571.) Thus, in *Parada* the weaker party had sufficient time to learn whether the proposed arbitration would impose costs beyond their expectations, but this did not prevent the *Parada* court from finding surprise. The same reasoning should apply here.

The only other difference between the Atlas Agreements we found unconscionable in *Parada* and the one the majority finds permissible here is the modification requiring one arbitrator instead of three. That modification, however, does not impact the foregoing analysis regarding the procedural unconscionability created by the Atlas Agreement's adhesive nature, its failure to provide the governing rules and fee schedules, and its cost provision regarding the three-arbitrator appeal.

I am not unmindful of factors adverse to a finding of procedural unconscionability, such as the availability of other investment alternatives. An arbitration conducted by one arbitrator is within the reasonable expectations of the parties, and the costs here may be within reasonable expectations depending on the circumstances. But the facts and authorities discussed above preclude a finding that the Atlas Agreement presents no procedural unconscionability at all. The foregoing facts and authority demonstrate a low to moderate degree of procedural unconscionability that requires an analysis of whether the Atlas Agreement is substantively unconscionable.

5

(*Gatton*, *supra*, 152 Cal.App.4th at pp. 585-586 [a finding of even a minimal degree of procedural unconscionability requires court to determine whether, and to what degree, the agreement also is substantively unconscionable].)

*Substantive Unconscionability*

"'A provision is substantively unconscionable if it "involves contract terms that are so one-sided as to 'shock the conscience,' or that impose harsh or oppressive terms."' [Citation.] Substantive unconscionability may be shown if the disputed contract provision falls outside the nondrafting party's reasonable expectations. [Citation.]" (*Parada*, *supra*, 176 Cal.App.4th at p. 1573.) Here, I find three aspects of the Atlas Agreement combine to create a high degree of substantive unconscionability.

First, section 15.11, subdivision (k), describes the damages and remedies available to Nibler: "The parties agree that the damages available to any party bringing an action under this Agreement shall be limited to any actual contract damages and tort damages incurred by the party and *proximately caused* by and resulting from the other party's alleged breach. This paragraph states the exclusive damage remedies available to the parties." (Italics added.) This clause eliminates Nibler's punitive damage remedy because "[p]unitive damages are *not* compensation *for loss or injury*," but rather a "'private fine[]' intended to punish the defendant and to deter future wrongdoing.'" (*Marron v. Superior Court* (2003) 108 Cal.App.4th 1049, 1059, original italics; see also *State Farm Mut. Ins. Co. v. Campbell* (2003) 538 U.S. 408, 416 ["Compensatory damages 'are intended to redress the concrete loss that the plaintiff has suffered by reason of the defendant's wrongful conduct.' [Citation.] By contrast, punitive damages serve a broader function; they are aimed at deterrence and retribution"]; *Ferguson v. Lieff, Cabraser, Heimann & Bernstein* (2003) 30 Cal.4th 1037, 1046.)

In passing, the majority rejects Nibler's limitation of damages claim, in part because Monex concedes it would not oppose a punitive damage claim. But *Parada*

6

counsels courts not to consider after-the-fact offers by the drafter of the agreement. "If the provision, as drafted, would deter potential litigants, then it is unenforceable, regardless of whether, in a particular case, the [drafter] agrees" to forego reliance on an unconscionable term. (*Parada, supra*, 176 Cal.App.4th at p. 1584.) Monex's willingness to not enforce the remedies limitations provision does not alter its unconscionable character. (*Ibid.*) The majority also interprets the clause to allow punitive damages, but does not discuss the proximate causation language. Such an interpretation makes the clause superfluous, contrary to contract interpretation principles. (*Founding Members of the Newport Beach Country Club v. Newport Beach Country Club, Inc.* (2003) 109 Cal.App.4th 944, 957.)

Second, the requirement that the appealing party must pay all the costs of an arbitration appeal, including the fees of the three-judge appellate panel, further adds to the degree of substantive unconscionability. The provision in effect gives Monex the unilateral right to appeal because the costs are prohibitive for Nibler and other similarly-situated consumers. Courts reject as unconscionable one-sided provisions designed to maximize the drafter's advantage. (See *Little v. Auto Stiegler, Inc.* (2003) 29 Cal.4th 1064, 1071-1072 [postarbitration proceeding declared unconscionable because it "wholly or largely" benefited the stronger party "at the expense of the party on which arbitration is imposed"].)

Finally, it is substantively unconscionable to impose undefined and as yet undetermined costs that exceed the financial ability of the weaker party: "[W]here a consumer enters into an adhesive contract that mandates arbitration, it is unconscionable to condition that process on the consumer posting fees he or she cannot pay. It is self-evident that such a provision is unduly harsh and one-sided, defeats the expectations of the nondrafting party, and shocks the conscience. While arbitration may be within the reasonable expectations of consumers, a process that builds prohibitively expensive fees

7

into the arbitration process is not." (*Gutierrez*, *supra*, 114 Cal.App.4th at pp. 89-90; see also *Parada*, *supra*, 176 Cal.App.4th at pp. 1578-1580 [applying *Gutierrez*'s substantive unconscionability rule to Monex's Atlas Agreement].)

Here, JAMS charges each party a $400 filing fee and a $400 case management fee for every 10 hours. In addition, Nibler produced evidence the average rate for a JAMS retired judge is between $450 and $600 an hour. Based on the time estimate to conclude Nibler's arbitration, his share would be, at a minimum, $15,000. Nibler also presented substantial evidence in the trial court that the arbitration costs dramatically exceeded his ability to pay at the time he signed the agreement.[1] For people in Nibler's economic condition, the unanticipated fee structure is oppressive. Based on Nibler's declaration, it is clear he would not have agreed to arbitration had he been warned these fees could be imposed.

*Conclusion*

Measuring procedural and substantive unconscionability on a sliding scale, I conclude, as did the trial court, that Monex's arbitration provisions are unconscionable and should not be enforced. I would affirm the trial court's order.


ARONSON, J.

_____

[1]    We may not consider the money Nibler invested with Monex. To do so "would only reward Monex for its alleged wrongful conduct." (*Parada, supra*, 176 Cal.App.4th at p. 1584.)